Opinion filed May 22, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed May 22, 2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00311-CR 

                                                     __________

 

                                       DARRELL
ISHAM, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 114th District Court 

 

                                                          Smith
County, Texas

 

                                              Trial
Court Cause No. 241-1547-03

 



 

                                                                   O
P I N I O N

The
jury convicted Darrell Isham of manufacturing more than 400 grams of
methamphetamine.  The trial court sentenced Isham to life in prison and imposed
a fine of $100,000. We find that the State has confessed error by failing to
file a brief but affirm the conviction after an independent review because the
evidence is legally and factually sufficient and because trial counsel was not
constitutionally ineffective.

I.
Procedural History








Isham
was indicted for manufacturing 400 grams or more of methamphetamine by chemical
synthesis.  Isham initially elected to have the jury assess punishment in the
event of conviction, but he subsequently requested that the trial court assess
punishment.  The jury found Isham guilty, and the trial court sentenced him to
life in prison and ordered him to pay a fine of $100,000.  Isham filed a motion
for new trial and an amended motion for new trial.  These were overruled by
operation of law.  

Isham
filed a notice of appeal.  However, Isham=s
notice was two days late, and the Twelfth Court of Appeals dismissed his appeal
for lack of jurisdiction.  Isham filed an application for writ of habeas
corpus.  The Texas Court of Criminal Appeals found that counsel rendered
ineffective assistance and allowed him to file an out-of-time appeal.  Isham
filed a new notice of appeal, and the Texas Supreme Court transferred Isham=s appeal to this court in a
docket equalization order.  The following events transpired in this court:

February 20,
2007       Isham=s
brief is filed.

 

This court advises
counsel that Isham=s
brief has been received and that the State=s
brief was due on or before March 22, 2007. 

 

April
5, 2007                This court, on its own motion, directs the State to file
its brief on or before May 7, 2007.  AOtherwise,
we will assume the State wants to confess error and will set this case for
hearing.@

 

February
21, 2008       This court advises counsel that the case is being submitted
without oral argument on March 13, 2008.

 

March
31, 2008           The State submits a brief and motion for extension and late
filing of brief.

 

April
3, 2008                The State=s
motion for extension and late filing is overruled.

 

Because the
State failed to timely file a brief or motion for extension B despite having over one
year to do so and despite the original courtesy notice and two subsequent
reminders, we will treat the State as having confessed error and will analyze
this appeal accordingly.[1]








II. 
Issues on Appeal

Isham
challenges his conviction and sentence with three issues.  Isham complains that
trial counsel was constitutionally ineffective because he provided incorrect
advice about Isham=s
ability to receive a probated sentence from the trial court.  Isham also
complains that the jury=s
verdict was supported by legally and factually insufficient evidence.

                                                                     III.
Analysis

A.
The State=s
Confession of Error.

A
confession of error by the prosecutor is not conclusive when reviewing an
appeal.  Saldano v. State, 70 S.W.3d 873, 884 (Tex. Crim. App.
2002).  The appellate court must make an independent examination of the merits
of the claim of error.  This examination must necessarily be limited to the
arguments advanced in the trial court; otherwise, we run afoul of the
prohibition of advancing argument on behalf of the parties. Silverand v. State,
89 S.W.3d 216, 220 (Tex. App.CCorpus
Christi 2002, no pet.).

B.
Sufficiency of the Evidence.

1.  Standard of Review.

To
determine if the evidence is legally sufficient, we review all of the evidence
in the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Jackson
v. State, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000).  The factfinder is the
sole judge of the credibility of the witnesses and the weight to be given their
testimony.  Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App.
1992).  The factfinder may choose to believe or disbelieve all or any part of
any witness=s
testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

To
determine if the evidence is factually sufficient, the appellate court reviews
all of the evidence in a neutral light.  Watson v. State, 204 S.W.3d 
404, 414 (Tex. Crim. App. 2006).  Then, the reviewing court determines whether
the evidence supporting the verdict is so weak that the verdict is clearly
wrong and manifestly unjust or whether the verdict is against the great weight
and preponderance of the conflicting evidence.  Id. at 414-15.








2.  The Evidence. 

 Isham
complains that the evidence is legally and factually insufficient to support
his conviction because there was insufficient evidence linking him to the
contraband.  To sustain Isham=s
conviction, the State was required to prove that Isham knowingly and
intentionally manufactured methamphetamine.  Tex.
Health & Safety Code Ann. '
481.112(a) (Vernon 2003).  This required the State to affirmatively link Isham
to an interest in the place where the manufacturing occurred or to the actual
act of manufacturing. East v. State, 722 S.W.2d 170, 172 (Tex. App.CFort Worth 1986, pet. ref=d).  The purpose of this
requirement is to protect the innocent bystander who merely inadvertently
happens onto a methamphetamine lab.  

No
set formula exists to dictate a finding of affirmative link sufficient to
support a conviction.  Factors that may affirmatively link an accused to
contraband include the following:  (1) whether the accused was present
when the search was conducted; (2) whether the contraband was in plain view;
(3) whether the accused was in close proximity to and had access to the
contraband; (4) whether the accused was under the influence of narcotics when
arrested; (5) whether the accused possessed other contraband or narcotics when
arrested; (6) whether the accused made incriminating statements when arrested;
(7) whether the accused attempted to flee; (8) whether the accused made furtive
gestures; (9) whether there was an odor of contraband; (10) whether other
contraband or drug paraphernalia was present; (11) whether the accused owned or
had the right to possess the place where the drugs were found; (12) whether the
place where the drugs were found was enclosed; (13) whether the accused
was found with a large amount of cash; and (14) whether the conduct of the
accused indicated a consciousness of guilt. Swarb v. State, 125 S.W.3d
672, 684 (Tex. App.CHouston
[1st Dist.] 2003, pet. dism=d). 
The number of factors present is not as important as the logical force or the
degree to which the factors, alone or in combination, tend to affirmatively
link the accused to the contraband.  Isbell v. State, 246 S.W.3d 235,
238 (Tex. App.CEastland
2007,  no pet.).








Isham
concedes that he owned the home where the meth lab was found, that the police
found a significant quantity of methamphetamine at his home, and that the lab
equipment was found in a place convenient to and in close proximity to him. 
This, however, was not the only evidence linking him to the lab.  Detective
Steve Henry received information from two different informants implicating
Isham in the manufacturing of methamphetamine.  Detective Henry obtained a
search warrant and executed that warrant at approximately 1:00 a.m.  Isham was
home when the police arrived and was detained while attempting to leave through
a back door.

The
police found a significant and active methamphetamine manufacturing operation
when they searched Isham=s
house.  Methamphetamine was being cooked when the police arrived.  They noticed
a strong ammonia odor before they even entered the house.  In fact, the odor
was so strong that they were forced to use gas masks.  They found precursors
and manufacturing equipment both inside and outside the residence.  The
material inside the house was found in the kitchen, master bedroom, and master
bathroom.

Kevin
Minor, a Department of Public Safety criminologist, testified that he found the
remains of a prior cooking operation, evidence of the initial stages of
manufacturing, material that was in the final stages of manufacture, and
finished methamphetamine.  He testified that there were signs of two or three
separate cooking operations in the house.  He measured over 3,000 grams of
material that tested positive for the presence of methamphetamine.  

The
State also introduced evidence that, the morning prior to his arrest, Isham
asked a friend if he knew of anyone that would purchase a large amount of
meth.  Isham told this friend that he was trying to raise bond money for his
son-in-law and that he would be making meth at his house that afternoon.  Several
months after his arrest, Isham told one of the State=s witnesses that he had been in the middle of
cooking meth when he was arrested but asked her to testify that he had been
with her the night of the raid.








This
is legally sufficient evidence to link Isham to the manufacturing operation. 
Isham correctly notes that there was no evidence that he had any money,
contraband, or paraphernalia on his person; that he was not impaired; that he
did not make an incriminating statement (to the police); and that he arguably
did not attempt to escape or flee.  However, when the evidence linking Isham to
the lab is viewed in the light most favorable to the verdict, a rational juror
could find beyond a reasonable doubt that Isham was manufacturing
methamphetamine in his house.  There was ample evidence that a large, ongoing
operation was in place and that anyone in the immediate area of the house B let alone inside it B would have been aware of
the lab.  Moreover, the fact that Isham was arrested at his house at one in the
morning is inconsistent with the notion that he was an innocent bystander in
the wrong place at the wrong time.

The
evidence is also factually sufficient.  Isham argues that no rational juror
could have found him guilty Agiven
the pathetic lack of solid evidence@
against him.  He contends that no one checked his car hood to see if the engine
was warm and suggests that a warm engine would mean that he had just arrived. 
He notes that his fingerprints were not found on any of the lab equipment and
that the proffered reason for his cooking B
to raise bond money for his son-in-law B
makes no sense because he and his son-in-law did not like each other.  Finally,
he argues that, even if there is evidence that he cooked some of the 3,000
grams of material containing methamphetamine, there is no indication that he
cooked all of it.

We
disagree with Isham=s
characterization of the evidence.  There was  evidence that  Isham was planning
on cooking a large quantity of methamphetamine prior to his arrest and that,
after his arrest, he admitted to one of the State=s
witnesses that he had been cooking and asked her to change her testimony. There
was evidence that a working lab was found in Isham=s house at one in the morning, that
manufacturing equipment and supplies were found in three separate rooms in the
house, and that there were remnants of prior manufacturing operations in a burn
pile outside the residence.  There was evidence of completed operations, nearly
completed operations, and ongoing operations.  There was no evidence that Isham
had been anywhere but his house that night, and he was arrested while trying to
leave through a back door.  While police were unable to find Isham=s fingerprints on ten items
of lab equipment, the jury could also reasonably consider that the police were
only able to find a single latent fingerprint with sufficient detail to make an
identification.

The
evidence is not so weak that the jury=s
verdict is clearly wrong or manifestly unjust, nor is the verdict against the
great weight and preponderance of the evidence. Isham=s second and third issues are overruled.

C. 
Ineffective Assistance of Counsel.








To
prevail on a claim of ineffective assistance of counsel, an appellant must
establish that his lawyer=s
performance fell below an objective standard of reasonableness and that there
is a Areasonable
probability@ the
result of the proceeding would have been different but for counsel=s deficient performance.   Strickland
v. Washington, 466 U.S. 668, 693-94 (1984); Mallett v. State, 65
S.W.3d 59, 62-63 (Tex. Crim. App. 2001). A reasonable probability is a
probability sufficient to undermine confidence in the outcome of the trial. 
Hernandez v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). The purpose
of this two-pronged test is to judge whether counsel=s conduct so compromised the proper
functioning of the adversarial process that the trial cannot be said to have
produced a reliable result. Thompson v. State, 9 S.W.3d 808, 812-13
(Tex. Crim. App. 1999).

The
review of defense counsel=s
representation is highly deferential and presumes that counsel=s actions fell within a
wide range of reasonable professional assistance. Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000). Appellant must overcome the presumption
that, under the circumstances, the challenged action might be considered sound
trial strategy.  Jackson v. State, 877 S.W.2d 768 (Tex. Crim. App.
1994); Hayden v. State, 155 S.W.3d 640, 648 (Tex. App.CEastland 2005, pet. ref=d). To overcome the
presumption of reasonable professional assistance, Aany allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.@ 
Thompson, 9 S.W.3d at 814 (quoting McFarland v. State, 928 S.W.2d
482, 500 (Tex. Crim. App. 1996)).

Generally,
the record on direct appeal will not be sufficient to show that trial counsel=s representation was so
lacking as to overcome the presumption of reasonable conduct.  Bone v. State,
77 S.W.3d 828, 833 (Tex. Crim. App. 2002).  We do not inquire into trial
strategy unless no plausible basis exists for trial counsel=s actions.  Johnson v.
State, 614 S.W.2d 148, 152 (Tex. Crim. App. 1981).  When the record
contains no evidence of the reasoning behind trial counsel=s actions, we cannot
conclude that counsel=s
performance was deficient.  Jackson, 877 S.W.2d at 771.

In
this case, we are not required to speculate.  Trial counsel recommended going
to the trial court for punishment because of a mistaken belief that this would
make Isham eligible for deferred adjudication.  Isham originally elected to
have the jury assess punishment.  Shortly before trial, he filed his own
handwritten application asking the trial court to assess punishment in the
event of a guilty verdict.  Counsel brought this application to the trial court=s attention during voir
dire.  The trial court granted Isham=s
request, and counsel announced that he was filing an application for community
supervision.  During the punishment hearing, counsel asked the trial court for
a deferred adjudication of ten years.  The trial court responded that it could
not do so because Isham had been found guilty by a jury.  Counsel acknowledged
his mistake and thanked the trial court for the clarification.








Counsel
then made a record of his conversations with Isham concerning the punishment
election.  Counsel told the trial court that he had explained to Isham that the
jury could not consider community supervision, and he called Isham as a
witness.  Isham testified as follows:

Q. 
Mr. Isham, I consulted with you before this trial about what your rights were
as far as having B
going to the Judge or going to the jury; right?

 

A. 
Yes.

 

Q. 
And your instructions to me were that you wanted to enter a not guilty plea;
right?

 

A. 
Right.

 

Q. 
And we discussed what a Judge could do and what a jury could do, and you
remember those discussions; right?

 

A. 
Yup.

 

Q. 
Okay.  And in discussing what a Judge could do or what a jury could do, is it
correct to say that what you instructed me was you wanted to enter a not guilty
plea because you considered yourself not guilty no matter what either could do B whatever the Judge could
do or whatever the jury could do B
it didn=t really
matter?  And correct me if I=m
wrong, but I believe your instructions to me were that you wanted to enter a
not guilty plea because you believed yourself not guilty; is that correct?  So
whether or not the Judge could give a deferred or not give a deferred at any
particular time B it
really didn=t make any
difference to you, is that correct, because you were B you instructed me that it was going to be not
guilty no matter what; is that correct?

 

A. 
I don=t really understand
what you mean by that.

 

Q. 
Well, do you understand what the Judge just said about that she cannot do
deferred adjudication at this point?  She could have done it if a plea of
guilty had been entered to her.  Do you understand that?

 

A. 
No, I didn=t know you
could do that.  I didn=t
know that she could stop it with a deferred like that B if I was offered deferred that I could stop
and plead guilty.  I was never told that.  I was never told the Judge could
give me deferred if I entered a plea of guilty.

 

Q. 
Okay.  So would that have changed your instructions to me?

 








A.  Somewhat,
yeah.

 

Q.  If I had
told you that B Well,
it=s correct to say
that I informed you that she could give you B
that only the Judge could give you a deferred?  A jury could not give you deferred. 
I told you that?

 

A.  Yeah, you
told me that.

 

Q.  Okay.  And
then you instructed me that whether the Judge could give deferred or not didn=t matter.  That what
mattered was you wanted to enter a plea of not guilty.  Is that correct?

 

A. 
Yeah, I told you I wanted to enter a not guilty.  I don=t remember the whole conversation.  I assume
you=re right.

The trial court also questioned Isham.

THE COURT:  Just
a couple of quick questions, if you don=t
mind.  Did you understand when you elected to have B go to a jury on a plea of not guilty but
elected to have the Judge assess punishment B
did you understand at that time that the jury could not grant probation if [it]
found you guilty of the manufacture of methamphetamine, 400 grams or more,
because it was an aggravated punishment range and the jury could not grant you
probation?  Did you understand that?

 

ISHAM:  Yes, ma=am.

 

THE COURT:  Now,
did you understand that this Court could not grant you probation if you were
found guilty of aggravated manufacture of methamphetamine, more than 400 grams,
because the jury would have found you guilty already and your sentence would be
15 to 99 or life; therefore, you=re
not eligible for regular probation?  Did you understand that?

 

ISHAM:  Well, I
was told that B I was
told that I could be eligible for regular probation if I take the judgment from
the Judge B the
punishment from the Judge.

 

THE COURT:  Do
you understand now that=s
not the case?  A jury could not grant you probation and the Judge cannot grant
you probation?  Do you understand that?

 

ISHAM:  Yes, ma=am.

 

THE COURT:  All
right.  Understanding that, would that have changed your decision to have a
jury trial on the issue of guilt or innocence?

 

ISHAM:  Yes, ma=am.

 








The
record establishes that counsel misunderstood the law on deferred adjudication
and that he passed this misunderstanding on to his client.  Counsel=s mistake, alone, is
insufficient to establish an ineffective assistance of counsel claim.  There
must also be evidence:

(1)        that
the defendant was initially eligible to receive probation;

 

(2)
       that counsel=s
advice to go to the trial judge for sentencing was not given as part of a valid
trial strategy;

 

(3)        that
the defendant=s
decision to have the judge assess punishment was based on his attorney=s erroneous advice; and

 

(4)        that
the defendant=s
decision would have been different if counsel had  correctly informed him of
the law.

 

State v.
Recer, 815 S.W.2d 730, 731-32 (Tex. Crim. App. 1991). 

Isham
was initially eligible for probation.  His criminal record consisted
only of a 1989 misdemeanor driving while intoxicated conviction and a 2001
Class C misdemeanor conviction.  The Recer probation eligibility
requirement is sometimes described as requiring proof that the defendant Awas eligible to receive
probation.@[2] 
We believe the Court of Criminal Appeals included the word initially to
require that the defendant=s
eligibility be determined as of the filing of the punishment election rather
than at the time of the punishment hearing.  We recognize that Isham was
indicted for an offense that, if proven, precluded consideration of community
supervision by the judge or jury.  However, if he had been convicted of a
lesser included offense B
and the lesser included offense of manufacturing between 200 and 400 grams was
in the court=s charge B community supervision
would have been a permissible punishment.








Isham
has also satisfied the second and third requirements.  Isham=s strategy to go to the
trial court for punishment in hopes of obtaining deferred adjudication was not
a valid strategy.  Because the jury was deciding guilt or innocence, the trial
court would assess punishment only if the jury first found Isham guilty.  That
eliminated any possibility of receiving deferred adjudication.  Isham=s  punishment election was
based upon his attorney=s
erroneous advice.  It is clear that he wanted to be placed on community
supervision if convicted, that he knew the jury could not give him community
supervision, and that he thought the trial court could give him deferred
adjudication because his attorney told him so. 

The
final requirement is more problematic because Isham is not asking for a
punishment hearing with a jury but for a new trial and because, while Isham
argues to this court that if correctly advised he would have pleaded guilty,
his testimony before the trial court on this point was at best unclear.  Isham
twice admitted that he told his attorney to enter a plea of not guilty.  When
counsel asked if correct legal advice would have changed his instructions,
Isham responded, ASomewhat,
yeah.@  In what way
the record does not show, but we note that in response to a prior question he
referred to pleading guilty if offered deferred adjudication.  When the court
questioned Isham, he testified that correct legal advice would have changed his
decision to have a jury trial, but he did not say whether he would have pleaded
guilty or simply waived a jury.  However, Isham=s
final comments to the trial court and his posttrial conduct causes us to
conclude that he was not willing to unconditionally plead guilty.

After
the trial court rendered Isham=s
sentence, it asked him if he had any problems or complaints with his lawyer. 
He responded that he did not feel like counsel represented him to the best of
his ability stating, AThere
is a lot of things I asked to be brought up that wasn=t brought up.  Even the idea of knowing how to
manufacture was never brought up.  He knew B
I mean, I told him B I
tried to bring it up I didn=t
even know how to manufacture.@ 
Isham filed a pro se motion for new trial, argued that one of the State=s witnesses had recanted,
and advanced fifty-six challenges to the State=s
evidence.  He also executed an affidavit in support of his motion for new
trial.  That affidavit included a request that his counsel have more time to
investigate before the next trial.  At no point in the motion did he include
even an alternative request for a new punishment hearing.








Isham=s testimony is insufficient
to establish the fourth Recer element.  The incorrect legal advice Isham
received concerned the trial court=s
ability to order deferred adjudication.  That error impacted Isham=s election to go to the
trial court for punishment.  Isham, therefore, needed proof that he would have
otherwise elected to have the jury assess punishment.  See Recer, 815
S.W.2d at 732 (rejecting ineffective assistance claim in part because the
record did not reflect that appellant would have made a different sentencing
election if correctly advised on the law).[3]  
The appropriate remedy in this instance would be a new punishment hearing
before a jury.[4]  Isham did
not produce the necessary evidence and is not requesting appropriate relief.

Even
if we are incorrect and Isham has sufficiently shown that he would have
otherwise pleaded guilty and if we assume that this is sufficient to constitute
ineffective assistance, he has not demonstrated harm.  Isham correctly notes
that he received the maximum sentence and argues that, if he had not insisted
on a jury trial, the trial court would have at least considered the possibility
of a deferred adjudication or otherwise might have considered a less severe
sentence.  We cannot reach either conclusion on the record before us.  The
trial court=s sentence
is significant to be sure; but the trial court knew that Isham appeared for
trial under the influence of methamphetamine, was found guilty of operating a
large and active manufacturing operation, was in possession of over seven times
the amount of methamphetamine-containing material necessary to constitute an
aggravated offense, and tried to suborn perjury.  Each of these factors would
have been relevant to a punishment decision even if Isham had originally
pleaded guilty.  The trial court=s
punishment forecloses any belief that deferred adjudication was a possibility. 
The multitude of aggravating factors precludes any determination that Isham=s plea was determinative of
his punishment.  In fact, when the State argued that Isham had not accepted
responsibility for his own actions, the trial court immediately and sua sponte
announced that it would not consider that argument.  Isham=s first issue is overruled.

IV. 
Holding

The
judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

May 22, 2008

Publish.  See
Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]The State=s
late-filed motion for extension complains of being understaffed and under a
heavy workload.  The State contends that Isham received two extensions of time
from this court to file his brief and that no extensions had been granted to or
requested by the State.  However, Isham did not file a motion for extension
with this court; we granted the State one extension on our own motion; and the
case was set for submission almost one year to the day from the State=s original deadline.  The State also contends that it
was unaware that Isham=s brief was filed because counsel did not receive a
copy.  Isham=s certificate of service reflects that a copy of his
brief was served on the State=s appellate
counsel on February 14, 2007, and this court sent the State a courtesy notice
on February 20, 2007, advising counsel that we had received Isham=s brief and reminding counsel of his deadline.  We subsequently
sent two more reminders.  We are not unsympathetic to the demands placed upon
counsel by an active docket, but at the same time, we expect counsel to read
our correspondence.  When three deadlines pass without any action by the State,
we must proceed accordingly.





[2]See, e.g., Bernal v. State, No. 08-00-00552-CR, 2002 WL 31087302 (Tex. App.CEl Paso Sept. 19, 2002, no pet.) (not designated for
publication).  We note that, even though the court phrased the requirement in
this manner, it still examined the defendant=s
probation eligibility as of the time of his punishment election.





[3]See also Embree v. State, Nos. 05-01-01052-CR & 05-01-01053-CR, 2003 WL
1492950 at *8 (Tex. App.CDallas March 25, 2003, pet. ref=d) (not designated for publication) (rejecting
ineffective assistance claim because the record did not reflect that defendant=s sentencing decision would have been different if he
had received correct legal advice on the trial court=s authority to assess community supervision).  But
see Bernal, 2002 WL 31087302 at *2 (record established that defendant went
to judge rather than jury for sentencing on the incorrect legal advice of
counsel).





[4]See, e.g., Bernal, 2002 WL 31087302 at *2.