**Opinion filed June 14, 2012**



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00387-CR

_____

## TOBIN BARRI CAMPBELL, Appellant
## V.
## STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR20328**

## MEMORANDUM OPINION

Tobin Barri Campbell appeals his conviction by a jury for the offense of possession of a controlled substance, methamphetamine, in an amount of less than one gram. After Campbell pleaded true to an enhancement paragraph based upon prior convictions, the jury assessed his punishment at ten years in the Texas Department of Criminal Justice, Institutional Division. He contends in two issues on appeal that the evidence is insufficient to support his conviction and that his punishment was cruel, unusual, and grossly disproportionate for the act committed, under both the United States and Texas constitutions. We affirm.

Campbell contends in Issue One that the evidence is insufficient to support his conviction. We review a sufficiency of the evidence issue, regardless of whether it is denominated as a legal or as a factual sufficiency claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim.

App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

In a prosecution for possession of a controlled substance, the State must prove that the accused exercised care, custody, control, or management over the substance and that the accused knew the substance was contraband. TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West 2010); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988). The State does not have to prove that the accused had exclusive possession of the contraband; joint possession is sufficient to sustain a conviction. *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986). When the accused is not shown to have had exclusive possession of the place where the contraband was found, the evidence must affirmatively link the accused to the contraband. *Pollan v. State*, 612 S.W.2d 594, 596 (Tex. Crim. App. 1981). The legal issue with respect to such "links" is "whether there was evidence of circumstances, in addition to mere presence, that would adequately justify the conclusion that the defendant knowingly possessed the substance." *Evans*, 202 S.W.3d at 161–62 n.9. No set formula exists to dictate a finding of affirmative links sufficient to support an inference of knowing possession of contraband. *Isbell v. State*, 246 S.W.3d 235, 238 (Tex. App.—Eastland 2007, no pet.); *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). The number of factors present is not as important as the logical force or the degree to which the factors, alone or in combination, tend to affirmatively link the defendant to the contraband. *Isbell*, 246 S.W.3d at 238.

Carlyle Gover, a narcotics investigator with the Brown County Sheriff's Department, testified that, in March 2009, he and others conducted a probation search of the residence of Josiah Brown. Gover indicated that, when Brown was asked if he wanted to surrender anything, Brown surrendered a Camel cigarette tin that contained some marihuana. Gover stated that, when they entered the living room of the garage apartment where Brown was residing, there was marihuana paraphernalia, including two large water pipes or bongs, near the door. He testified that Brown also surrendered a spoon in the bathroom, a syringe, another spoon, and a bag of mushrooms. Gover said the mushrooms had been well hidden in the entertainment center.

Gover testified that Brown resided in the living room of the garage apartment, where he slept in a recliner. He said he found out that Campbell resided in the bedroom. He related that Brown had not surrendered anything from the bedroom. Gover stated that Probation Officer Jay Curtis found a tin in the bottom drawer of a dresser in the far corner of the bedroom. He indicated that the tin contained marihuana paraphernalia, as well as a glass methamphetamine pipe. Gover testified that, even though he explained to Brown that his acknowledging that the methamphetamine pipe was his would not add to a greater total amount of methamphetamine in his possession, Brown was pretty adamant that it was not his pipe.

Gover testified that he interviewed Campbell after the search. He indicated that Campbell admitted he owned a glass, marihuana-smoking pipe and that he smoked marihuana when he could afford it. According to Gover, Campbell said at first that he did not use the bottom drawer of the dresser, but then later Campbell said that he had not seen the tin in the bottom drawer when he was looking for socks in that drawer. Gover related that, when confronted with the discrepancy, Campbell acknowledged that he and Brown shared the bottom drawer. Gover stated that, while Campbell first denied ownership or possession of any of the items found in the tin, he later claimed ownership of marihuana pipes contained there.

Gover testified that Campbell made a written statement. In the statement, Campbel said, "The round tin was found in the bottom drawer of the dresser which I use." In the statement, Campbell denied that the methamphetamine pipe was his. Gover indicated that the methamphetamine pipe was packaged and sent to the lab for analysis. He acknowledged that he did not run a fingerprint test on the methamphetamine pipe.

Brown testified that he occupied the living room of the apartment and did not ever stay in the bedroom. He denied that the methamphetamine pipe was his. He said he injected methamphetamine, but did not smoke it. Brown denied having any agreement with Campbell that he would use the bottom drawers of the dresser while Campbell would use the top drawers.

Herman Carrell testified that he is a forensic scientist with the Texas Department of Public Safety out of the Abilene Crime Lab. He testified that his analysis of the methamphetamine pipe showed that it contained a trace amount of methamphetamine.

Campbell testified that the methamphetamine pipe was not his, while acknowledging ownership of the marihuana pipes. He denied knowing that the pipe was in the tin and denied that he had ever handled it. He denied ever using methamphetamine and insisted that he had told Brown that he did not want him to have drugs in the house. Campbell stated that he had an

agreement with Brown that Brown could have the top three drawers of the chest of drawers and that Campbell would have the bottom three. He acknowledged that he kept his socks in the drawer where the methamphetamine pipe was found and that it was his can in the bottom of the drawer.

During his testimony, Campbell acknowledged numerous prior convictions, including one for indecency with a minor, a revocation of parole based upon a marihuana charge, and a conviction for unauthorized use of a motor vehicle. He also acknowledged that he had served one year in state jail for violation of sex-offender registration requirements and that he had numerous misdemeanor marihuana convictions. On cross-examination, Campbell acknowledged that "it was obvious that drugs were going on" in the apartment.

Tammy Doss, a coworker of Brown and Campbell at a fast-food restaurant in Brownwood, testified in connection with Brown moving into Campbell's apartment. When asked whether Campbell made any statements about his intent regarding the possession or use of any hard drugs, such as methamphetamine, cocaine, or heroin at the residence, Doss testified that Campbell said that "he would not be allowed to do any of that."

Amber Beam, another coworker at the same restaurant, testified that Campbell told Brown that he might drink occasionally but that there was to be nothing above and beyond that within the limits at his home. On cross-examination, Beam acknowledged that she was aware that both Campbell and Brown were using marihuana at places other than work. She also acknowledged that she was in recovery for methamphetamine usage.

Denise Cavanaugh testified that Campbell's stepson is the father of her child. She said she lived with her daughter and with Campbell's wife at the main house adjacent to the garage apartment where Campbell lived. She indicated that Campbell and his wife had made the rule that there were to be no drugs when Brown came to stay with Campbell. She said that Brown would have drug paraphernalia lying around and that Campbell's stepson got on to him to put it up. She indicated that she was not surprised to hear that Campbell also used the drug paraphernalia. Robert Campbell, Campbell's son, also testified that Campbell had said he did not want any type of drugs in the house. He acknowledged that, in view of what was found in the search, the rules were not being followed.

Considering all of the evidence in the manner required by *Jackson*, we hold that the evidence is sufficient to support the conviction. Among other things, the evidence shows that the methamphetamine found was in the room occupied by Campbell, in a dresser drawer that was

4

used by Campbell, and in a tin owned by Campbell. In his discussion of this issue, Campbell does not dispute this evidence. We overrule Issue One.

Campbell urges in Issue Two that his punishment was cruel, unusual, and grossly disproportionate, under both the United States and Texas constitutions, for the act he committed. A complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, must be preserved for appellate review by a timely request, objection, or motion stating the specific grounds for the ruling desired. *Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd). We note that Campbell presented this issue in his motion for new trial.

The Texas Court of Criminal Appeals has held, "Subject only to a very limited, 'exceedingly rare,' and somewhat amorphous Eighth Amendment gross-disproportionality review, a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal." *Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006) (footnote omitted). Campbell's argument is based on the assertion that he received the maximum sentence, as well as certain mitigating factors. He asserts that not everyone similarly situated has received the maximum sentence, but there is no evidence in the record of sentences imposed for similar offenses on criminals in Texas or other jurisdictions by which to make a comparison.

In the case of *Rummel v. Estelle*, 445 U.S. 263 (1980), the United States Supreme Court considered whether the imposition of a mandatory life sentence with possibility of parole under the Texas recidivist statute in effect at the time constituted a disproportionate sentence forbidden by the Eighth Amendment. Rummel's three convictions that formed the basis of the enhanced punishment included the prior use of a credit card to obtain $80 worth of goods or services, passing a forged check in the amount of $28.36, and theft by false pretenses in the amount of $120.75. 445 U.S. at 265–66. The Court concluded that the sentence imposed did not constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution, despite Rummel's assertion that the punishment was disproportionate. *Id.* at 285.

In the case at bar, Campbell's punishment was subject to enhancement because of his prior convictions for unauthorized use of a motor vehicle and for failure to comply with registration requirements of a sex offender. We note that, in addition to the offenses alleged for enhancement, Campbell acknowledged prior convictions for indecency with a minor, revocation of parole based upon a marihuana charge, and numerous misdemeanor marihuana convictions.

In this case, the jury was authorized to assess Campbell's punishment at a term of not more than ten or less than two years, with the option of additionally fining him in an amount not to exceed $10,000. The jury assessed his punishment at ten years confinement in the Texas Department of Criminal Justice, Institutional Division, but assessed no fine.

Having compared the facts in *Rummel* to the facts in this case, we conclude that Campbell has failed to establish that his punishment was disproportionate so as to constitute a violation of his rights under either the United States Constitution or the Texas constitution. While Campbell refers to trial testimony, including mitigating factors that he urges should have resulted in less than the maximum punishment, he presents no authority in support of his contention that his sentence was disproportionate, nor does he refer us to any evidence showing a comparison of his sentence with others in Texas or in other states. We overrule Issue Two.

The judgment of the trial court is affirmed.

PER CURIAM

June 14, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Hill.[1]

---

[1]John G. Hill, Former Chief Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.