Opinion filed June 14,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00387-CR

                                                    __________

 

                             TOBIN
BARRI CAMPBELL, Appellant

                                                             V.

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 35th District Court

                                                           Brown
County, Texas

                                                   Trial
Court Cause No. CR20328

 



 

                                            M
E M O R A N D U M   O P I N I O N

 Tobin
Barri Campbell appeals his conviction by a jury for the offense of possession
of a controlled substance, methamphetamine, in an amount of less than one gram. 
After Campbell pleaded true to an enhancement paragraph based upon prior
convictions, the jury assessed his punishment at ten years in the Texas
Department of Criminal Justice, Institutional Division.  He contends in two
issues on appeal that the evidence is insufficient to support his conviction
and that his punishment was cruel, unusual, and grossly disproportionate for
the act committed, under both the United States and Texas constitutions.  We
affirm.

 Campbell contends in Issue One that the evidence is
insufficient to support his conviction.  We review a sufficiency of the
evidence issue, regardless of whether it is denominated as a legal or as a
factual sufficiency claim, under the standard of review set forth in Jackson v. Virginia,
443 U.S. 307 (1979).  Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim.
App. 2010); Polk v. State, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet.
ref’d).  Under the Jackson standard, we examine all of the evidence in
the light most favorable to the verdict and determine whether, based on that
evidence and any reasonable inferences from it, any rational trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt.  Jackson, 443 U.S. at 319; Isassi v. State, 330 S.W.3d
633, 638 (Tex. Crim. App. 2010).

In a prosecution for possession of a controlled substance, the State
must prove that the accused exercised care, custody, control, or management
over the substance
and that the accused knew the substance
was contraband.  Tex. Health &
Safety Code Ann. § 481.002(38) (West 2010); Evans v. State, 202
S.W.3d 158, 161 (Tex. Crim. App. 2006); Martin v. State, 753 S.W.2d 384,
387 (Tex. Crim. App. 1988).  The State does not have to prove that the accused
had exclusive possession of the contraband; joint possession is sufficient to
sustain a conviction.  Cude v. State, 716 S.W.2d 46, 47 (Tex. Crim. App.
1986).  When the accused is not shown to have had exclusive possession of the
place where the contraband was found, the evidence must affirmatively link the
accused to the contraband.  Pollan v. State, 612 S.W.2d 594, 596 (Tex.
Crim. App. 1981).  The legal issue with respect to such “links” is “whether
there was evidence of circumstances, in addition to mere presence, that would
adequately justify the conclusion that the defendant knowingly possessed the substance.”  Evans,
202 S.W.3d at 161–62 n.9.  No set formula exists to dictate a finding of
affirmative links sufficient to support an inference of knowing possession of
contraband.  Isbell v. State, 246 S.W.3d 235, 238 (Tex. App.—Eastland
2007, no pet.); Taylor v. State, 106 S.W.3d 827, 831 (Tex. App.—Dallas
2003, no pet.).  The number of factors present is not as important as the
logical force or the degree to which the factors, alone or in combination, tend
to affirmatively link the defendant to the contraband.  Isbell, 246
S.W.3d at 238.

Carlyle Gover, a narcotics investigator with the Brown County
Sheriff’s Department, testified that, in March 2009, he and others conducted a
probation search of the residence of Josiah Brown.  Gover indicated that, when Brown
was asked if he wanted to surrender anything, Brown surrendered a Camel
cigarette tin that contained some marihuana.  Gover stated that, when they
entered the living room of the garage apartment where Brown was residing, there
was marihuana paraphernalia, including two large water pipes or bongs, near the
door.  He testified that Brown also surrendered a spoon in the bathroom, a
syringe, another spoon, and a bag of mushrooms.  Gover said the mushrooms had
been well hidden in the entertainment center.

            Gover
testified that Brown resided in the living room of the garage apartment, where
he slept in a recliner.  He said he found out that Campbell resided in the
bedroom.  He related that Brown had not surrendered anything from the bedroom. 
Gover stated that Probation Officer Jay Curtis found a tin in the bottom drawer
of a dresser in the far corner of the bedroom.  He indicated that the tin
contained marihuana paraphernalia, as well as a glass methamphetamine pipe. 
Gover testified that, even though he explained to Brown that his acknowledging
that the methamphetamine pipe was his would not add to a greater total amount
of methamphetamine in his possession, Brown was pretty adamant that it was not
his pipe.

            Gover
testified that he interviewed Campbell after the search. He indicated
that Campbell admitted he owned a glass, marihuana-smoking pipe and that he
smoked marihuana when he could afford it.  According to Gover, Campbell
said at first that he did not use the bottom drawer of the dresser, but then
later Campbell said that he had not seen the tin in the bottom drawer when he
was looking for socks in that drawer.  Gover related that, when confronted with
the discrepancy, Campbell acknowledged that he and Brown shared the bottom
drawer.  Gover stated that, while Campbell first denied ownership or possession
of any of the items found in the tin, he later claimed ownership of marihuana
pipes contained there.

            Gover
testified that Campbell made a written statement.  In the statement, Campbel
said, “The round tin was found in the bottom drawer of the dresser which I
use.”  In the statement, Campbell denied that the methamphetamine pipe was his.
Gover indicated that the methamphetamine pipe was packaged and sent to the lab
for analysis.  He acknowledged that he did not run a fingerprint test on the
methamphetamine pipe.

            Brown
testified that he occupied the living room of the apartment and did not ever
stay in the bedroom. He denied that the methamphetamine pipe was his. He said
he injected methamphetamine, but did not smoke it.  Brown denied having any
agreement with Campbell that he would use the bottom drawers of the dresser
while Campbell would use the top drawers.     Herman Carrell testified that he
is a forensic scientist with the Texas Department of Public Safety out of the
Abilene Crime Lab. He testified that his analysis of the methamphetamine pipe
showed that it contained a trace amount of methamphetamine.     Campbell
testified that the methamphetamine pipe was not his, while acknowledging
ownership of the marihuana pipes.  He denied knowing that the pipe was in the
tin and denied that he had ever handled it.  He denied ever using
methamphetamine and insisted that he had told Brown that he did not want him to
have drugs in the house.  Campbell stated that he had an agreement with Brown
that Brown could have the top three drawers of the chest of drawers and that Campbell
would have the bottom three.  He acknowledged that he kept his socks in the
drawer where the methamphetamine pipe was found and that it was his can in the
bottom of the drawer.

            During
his testimony, Campbell acknowledged numerous prior convictions, including one
for indecency with a minor, a revocation of parole based upon a marihuana
charge, and a conviction for unauthorized use of a motor vehicle.  He also
acknowledged that he had served one year in state jail for violation of
sex-offender registration requirements and that he had numerous misdemeanor
marihuana convictions.  On cross-examination, Campbell acknowledged that “it
was obvious that drugs were going on” in the apartment.

            Tammy
Doss, a coworker of Brown and Campbell at a fast-food restaurant in Brownwood,
testified in connection with Brown moving into Campbell’s apartment.  When
asked whether Campbell made any statements about his intent regarding the
possession or use of any hard drugs, such as methamphetamine, cocaine, or
heroin at the residence, Doss testified that Campbell said that “he would not
be allowed to do any of that.”

            Amber
Beam, another coworker at the same restaurant, testified that Campbell told
Brown that he might drink occasionally but that there was to be nothing above
and beyond that within the limits at his home.  On cross-examination, Beam
acknowledged that she was aware that both Campbell and Brown were using marihuana
at places other than work.  She also acknowledged that she was in recovery for
methamphetamine usage.

Denise Cavanaugh testified that Campbell’s stepson is the father
of her child.  She said she lived with her daughter and with Campbell’s wife at
the main house adjacent to the garage apartment where Campbell lived.  She
indicated that Campbell and his wife had made the rule that there were to be no
drugs when Brown came to stay with Campbell.  She said that Brown would have
drug paraphernalia lying around and that Campbell’s stepson got on to him to
put it up. She indicated that she was not surprised to hear that Campbell also
used the drug paraphernalia.  Robert Campbell, Campbell’s son, also testified
that Campbell had said he did not want any type of drugs in the house.  He
acknowledged that, in view of what was found in the search, the rules were not
being followed.

Considering all of the evidence in the manner required by Jackson,
we hold that the evidence is sufficient to support the conviction.  Among other
things, the evidence shows that the methamphetamine found was in the room
occupied by Campbell, in a dresser drawer that was used by Campbell, and in a
tin owned by Campbell.  In his discussion of this issue, Campbell does not dispute
this evidence.  We overrule Issue One.

            Campbell
urges in Issue Two that his punishment was cruel, unusual, and grossly
disproportionate, under both the United States and Texas constitutions, for the
act he committed. A complaint that a sentence is grossly disproportionate,
constituting cruel and unusual punishment, must be preserved for appellate
review by a timely request, objection, or motion stating the specific grounds
for the ruling desired.  Kim v. State, 283 S.W.3d 473, 475 (Tex. App.—Fort
Worth 2009, pet. ref’d).  We note that Campbell presented this issue in his
motion for new trial.

            The
Texas Court of Criminal Appeals has held, “Subject only to a very limited, ‘exceedingly
rare,’ and somewhat amorphous Eighth Amendment gross-disproportionality review,
a punishment that falls within the legislatively prescribed range, and that is
based upon the sentencer’s informed normative judgment, is unassailable
on appeal.”  Ex parte Chavez, 213 S.W.3d 320, 323–24 (Tex. Crim. App.
2006) (footnote omitted).  Campbell’s argument is based on the assertion that
he received the maximum sentence, as well as certain mitigating factors.  He
asserts that not everyone similarly situated has received the maximum sentence,
but there is no evidence in the record of sentences imposed for similar
offenses on criminals in Texas or other jurisdictions by which to make a
comparison.

            In
the case of Rummel v. Estelle, 445 U.S. 263 (1980), the United
States Supreme Court considered whether the imposition of a mandatory life
sentence with possibility of parole under the Texas recidivist statute in
effect at the time constituted a disproportionate sentence forbidden by the
Eighth Amendment.  Rummel’s three convictions that formed the basis of the
enhanced punishment included the prior use of a credit card to obtain $80 worth
of goods or services, passing a forged check in the amount of $28.36, and theft
by false pretenses in the amount of $120.75.  445 U.S. at 265–66.  The Court
concluded that the sentence imposed did not constitute cruel and unusual
punishment under the Eighth and Fourteenth Amendments to the United States
Constitution, despite Rummel’s assertion that the punishment was
disproportionate.  Id. at 285.

            In
the case at bar, Campbell’s punishment was subject to enhancement because of
his prior convictions for unauthorized use of a motor vehicle and for failure
to comply with registration requirements of a sex offender.  We note that, in
addition to the offenses alleged for enhancement, Campbell acknowledged prior
convictions for indecency with a minor, revocation of parole based upon a marihuana
charge, and numerous misdemeanor marihuana convictions.  In this case, the jury
was authorized to assess Campbell’s punishment at a term of not more than ten
or less than two years, with the option of additionally fining him in an amount
not to exceed $10,000.  The jury assessed his punishment at ten years
confinement in the Texas Department of Criminal Justice, Institutional Division,
but assessed no fine.

Having compared the facts in Rummel to the facts in
this case, we conclude that Campbell has failed to establish that his
punishment was disproportionate so as to constitute a violation of his rights
under either the United States Constitution or the Texas constitution.  While
Campbell refers to trial testimony, including mitigating factors that he urges
should have resulted in less than the maximum punishment, he presents no
authority in support of his contention that his sentence was disproportionate,
nor does he refer us to any evidence showing a comparison of his sentence with
others in Texas or in other states.  We overrule Issue Two.

The judgment of the trial court is affirmed.

 

                                                                                                PER
CURIAM

 

June
14, 2012                                                                          

Do not
publish.  See Tex. R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,

McCall, J., and Hill.[1]









                [1]John
G. Hill, Former Chief Justice, Court of Appeals, 2nd District of Texas at Fort
Worth, sitting by assignment.