**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert PHILLIPS and William Arnold
Tolbert, Jr., Defendants-Appellants.**

**No. 73–1230.**

United States Court of Appeals,
Fifth Circuit.

July 15, 1974.

**1396**

Philip A. Gillis, Detroit, Mich., for defendants-appellants.

Anthony J. P. Farris, U. S. Atty., Robert Darden, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before WISDOM, GODBOLD and INGRAHAM, Circuit Judges.

GODBOLD, Circuit Judge:

The appellants were convicted in a nonjury trial for possession of 230 pounds of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The contraband was discovered on May 5, 1972, in the locked trunk of an automobile rented and driven by Phillips and in which Tolbert was a passenger, and as a result of an immigration search conducted by border patrol officers at a highway checkpoint.

We know these facts about the search in question. The checkpoint was located approximately 11 miles north of Laredo, Texas, (approximately 9 miles north of the city limits), on highway 35, the main highway from Laredo north to San Antonio. As the crow flies the point was three and a half to four miles from the Rio Grande River, the international boundary. It may fairly be inferred from overall consideration of this and other cases,[1] that the government employs a checkpoint with at least some degree of regularity a few miles north of Laredo on the main highway to San Antonio.

The location at which Phillips and Tolbert were stopped was divided into primary and secondary search areas. At around 8:00 a. m. the officers on duty were conducting what they termed a "blitz," checking for illegal aliens by stopping every vehicle that came through and opening the trunk of some or all.[2] They referred to this time of

---

1. E. g., United States v. Maggard, 451 F.2d 502 (CA5, 1971), cert. denied, 405 U.S. 1045, 92 S.Ct. 1330, 31 L.Ed.2d 587 (1972); United States v. DeLeon, 462 F.2d 170 (CA5, 1972), cert. denied, 414 U.S. 853, 94 S.Ct. 76, 38 L.Ed.2d 102 (1973); United States v. McDaniel, 463 F.2d 129 (CA5, 1972), cert. denied, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041 (1973); United States v. Wright, 476 F.2d 1027 (CA5, 1973), cert. denied, 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1973).

2. At some places in their testimony officers implied they were searching the trunks of all cars. But at other places reference was made to "waiving cars through" while the transactions involving defendants were taking place.

day as the "changeover period" (the appellation was unexplained), and there was testimony that this was a time when many vehicles were coming through and "we have had occasion to have other people try to bring aliens through the checkpoint at the changeover time." Officers were working in shifts, and the 8:00 a. m. to 4:00 p. m. shift was on duty, comprising at least three officers. Stop signs were up to stop vehicles.

■■■ A search of automobiles for aliens under the circumstances of this case is valid. See United States v. DeLeon, 462 F.2d 170 (CA5, 1972), cert. denied, 414 U.S. 853, 94 S.Ct. 76, 38 L. Ed.2d 102 (1973); United States v. McDaniel, 463 F.2d 129 (CA5, 1972), cert. denied, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041 (1973).[3] Once the search in the present case was begun, it was legitimate for the officers to look wherever there was room for an alien to hide, and to seize evidence of other crimes if it was in plain view. See United States v. McDaniel, *supra*. Thus the District Court did not err in denying appellants' motion to suppress the marijuana found in the trunk of the rented car.

■■■ We turn to the sufficiency of the evidence to establish that Tolbert knowingly possessed the marijuana.[4] Both the possession and the knowledge of possession can be proved by circumstantial evidence, *e. g.*, Montoya v. United States, 402 F.2d 847 (CA5, 1968), and possession may be actual or constructive but in any event there must be dominion and control over the item or a power to exercise dominion and control. There are numerous caveats that go along with cases of circumstantial evidence of knowing possession. No term

is more ambiguous in common speech and in legal terminology than the word "possession," especially when it occurs in criminal statutory provisions, and "it is so fraught with danger that the courts must scrutinize its use with all diligence." Guevera v. United States, 242 F.2d 745 at 747 (CA5, 1957). "It is easy to get the eye off the target in a case like this, to focus so precisely on the inviting bullseye of the defendant's failure to give a credible explanation of why he was on the scene and what he was doing, that the requirement of possession never gets under the gunsight, and as a consequence the defendant is subjected to the critical inferences [here, the critical consequences of possession] not because he is a non-explaining possessor but because he is an incredible non-possessor who is where the action is." Fitzpatrick v. United States, 410 F.2d 513 at 515–516 (CA5, 1969). The line between knowing possession and guilt by association can be very thin. Proof of mere proximity to contraband is not sufficient to establish actual constructive possession or the element of knowledge. United States v. Canada, 459 F.2d 687 (CA5, 1972).

■■■ Mindful of these commands that we proceed with caution,[5] we conclude that there was sufficient evidence to support a finding of knowing possession by Tolbert. There was evidence which the court was entitled to credit, to the following effect. Phillips and Tolbert had flown together from Detroit to Texas, and they had come together to Texas on this and prior occasions and had traveled about the state together. Phillips had rented the car at Harlingen, Texas, at which time the agent delivered to him an ignition key and a trunk key. There is no evidence that Tolbert ever

---

3. The search in this case was pre-*Almeida-Sanchez*, 413 U.S. 266, 93 S.Ct. 2535, 37 L. Ed.2d 596 (1973). The standards of that case are not retroactive. United States v. Miller, 492 F.2d 37 (CA5, 1974).

4. No contention is made that the evidence of possession was insufficient as to Phillips.

5. See also the comments of Judge Tamm in United States v. Holland, 144 U.S.App.D.C. 225, 445 F.2d 701 (1971), pointing out the unsatisfactory and confused condition of the state of the law on proof of constructive possession, *e. g.*, "the law of constructive possession is what we will say it is in our next opinion." *Id.* at 704.

had a trunk key in his possession, but he was at the rental agency with Phillips when the car was rented. The two men stayed the night together in a motel. There were four or more large suitcases in the trunk, only one small suitcase inside the car. When the car was serviced by the rental agency before delivery only the spare tire was in the trunk. When told by the officers that they were checking for aliens, Tolbert inquired whether they were searching for drugs. The quantity of contraband was large, the packages numerous and sizeable, and some of them were loose in the trunk. At least one package, about 15″ x 10″ x 4″, was removed by an agent, and at least one of the agents observed through the plastic covering leaves, stems and seeds. An agent felt one of the packages and could feel vegetable matter within. As soon as access was obtained to the trunk, there was in the rear seat area a heavy smell of mothballs, whose odor is often used to mask the scent of marijuana, and there were moth flakes on the exterior of at least some of the packages.

Both appellants denied the existence of a trunk key. Before entering the trunk the agents attempted to secure a key from the rental firm owning the car, which entailed a delay of about 10 minutes. During this interim they talked separately to Tolbert and Phillips who gave conflicting explanations for their presence in the area. Tolbert stated he was in Texas because of family trouble, while Phillips said the two of them were there for business reasons.[6]

Under all of these circumstances the court could conclude that both Phillips and Tolbert had knowing possession of the marijuana.

The cases relied upon by Tolbert do not require a different result. In Montoya v. United States, 402 F.2d 847 (CA5, 1968), appellant Montoya was a passenger in the front seat of a pickup truck owned by a third person but driven by his brother-in-law. It had on the back an enclosed homemade camper with a door but without windows. Within was 539 pounds of marijuana in 25 large cloth sacks, inside of which were small plastic bags each containing a paper package of marijuana. On appeal we concluded that the jury must have totally rejected Montoya's incredible story of the events leading up to the arrest. This being so, there was no evidence of a joint undertaking other than Montoya's presence in the vehicle as a passenger. Nor was there any evidence, other than Montoya's presence, that he had any reason to enter the enclosed portion of the truck or any nexus to it or any reason to be aware of the presence of the sacks, or, if he was aware of them, any knowledge of their contents. In a later case of marijuana in a car trunk we sustained the conviction of the passenger and distinguished Montoya because of evidence, from a statement made by the passenger, that he was aware of the presence of the contraband. United States v. Canada, supra. United States v. Lowry, 456 F.2d 341 (CA5, 1972), also relied upon by appellants, is another case in which there was no basis for belief that the defendant either saw or knew of the existence of contraband in the vehicle. In Cuthbert v. United States, 278 F.2d 220 (CA5, 1960) the defendants were on a lengthy trip together, and five pounds of marijuana was purchased by one defendant (an addict) at a time the other defendants were not present and subsequently was found in his baggage. We reversed as to another defendant because there was insufficient evidence that he ever saw or took possession of any of the contraband.

In Guevera v. United States, supra, a package containing 50 marijuana cigarettes was found on the floor under-

**6.** Absent other and sufficient indicia of possession, a less-than-credible explanation by one in the proximity of contraband is not alone a ground for conviction. Fitzpatrick v. United States, 410 F.2d 513 at 516 n. 2

(CA5, 1969). But this is not to say that a less-than-credible explanation is not part of the overall circumstantial evidence from which possession and knowledge may be inferred.

neath the front seat of Guevera's car, occupied by him as driver and another man as passenger, at a point about midway between Guevera's seat and the passenger's seat and in a position accessible to either occupant by simply lowering his hand. Police arrested Guevera but accepted the explanation of both men that the passenger was only being transported home, and released the passenger who went away not to be seen again. Conviction of Guevera was reversed on the ground of insufficient evidence of possession, there being "no rational connection between ownership and possession of the car and possession of the cigarettes." The court pointed out that the car had been unlocked and the cigarettes could have been placed therein by any person. The quantity was so small that one could infer the occupants had no knowledge of its presence. There was no pattern of extensive joint prior conduct. It was as reasonable to believe that the contraband belonged to the unknown passenger as to Guevera.[7] In the present case, the car was locked, the suitcases were in the trunk, the quantity of contraband very large, a key had been delivered to Phillips but both defendants denied its existence, and there was an extensive pattern of conduct indicating a joint undertaking but with the two participants giving conflicting descriptions of it. In Ledet v. United States, 297 F. 2d 737 (CA5, 1962), the facts were similar to those of *Guevera,* plus evidence of other joint prior conduct including a lengthy trip together by the defendants, and we held the evidence sufficient, though barely so. The facts of the present case are stronger than *Ledet.* In United States v. Duke, 423 F.2d 387 (CA5, 1970), three men took a lengthy joint trip from the State of Washington to the Mexican border, followed by discovery near the border of a small quantity of heroin in the car, in a Winston cigarette package. We held the evidence not sufficient to support possession by two of the occupants. The third man, Sanchez, was killed in an accident after arrest and before indictments were returned. He was the only one of the three who spoke Spanish, the only one who smoked Winston cigarettes, the one who went to a bank near the border and borrowed money, the one most likely to be familiar with the area, and, additionally he was more often separate from the other two, who usually were together. We held the evidence did not exclude the reasonable possibility that Sanchez alone possessed the heroin and that its presence was unknown to the others. There are no facts in this case tending to establish exclusive possession and knowledge by Phillips except that the car was rented by him and he was the driver.

The agents' efforts to secure a key from the rental company were fruitless. They then entered the trunk by lifting the seat portion of the rear seat and, with a wrench, unscrewing and removing the back of the rear seat, which made available a structural opening into the trunk area. Through the opening an agent could see packages and two or more suitcases which blocked further view of the interior of the trunk. He lifted out at least one package, tore a corner of a package and saw marijuana within. The entry into the trunk as part of an otherwise valid border search was not impermissible. United States v. DeLeon, 462 F.2d 170 (CA5, 1972); United States v. Salinas, 439 F.2d 376 (CA5, 1971); Morales v. United States, 378 F.2d 187 (CA5, 1967).

Other points raised by appellants require no discussion.

Affirmed.

7. See *e. g.* United States v. Leazar, 460 F.2d 982 at 985, footnote 6 (CA9, 1972), distinguishing *Guevera.*