**William Carl ISBELL, Jr., Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–06–00037–CR.**

Court of Appeals of Texas, Eastland.

Nov. 29, 2007.

Earnest W. Scott, Law Firm of Earnest W. Scott, Abilene, for appellant.

Billy John Edwards, Dist. Atty., Jones & Shackelford Counties, Anson, for appellee.

Panel consists of WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

The jury convicted William Carl Isbell, Jr. of the second degree felony offense of possession of methamphetamine in an amount of four grams or more but less than 200 grams. The jury assessed punishment at eight years confinement. Appellant challenges his conviction in two issues. We affirm.

### Background Facts

Law enforcement officers executed a search warrant on appellant's residence during the evening of January 29, 2004, for the purpose of searching for methamphetamine. As part of the search, the officers looked inside a refrigerator that was in the kitchen of the residence. In the freezer section of the refrigerator, one of the officers found a jar that contained 130.92 grams of a substance containing methamphetamine. Appellant and his wife, Anita Marie Isbell, were both charged with possession of the methamphetamine. In a separate case, Anita pleaded guilty, and the jury assessed her punishment at five years confinement. In this cause, the trial court instructed the jury in the charge that, if an offense was committed, Anita was an accomplice to the offense.

### Issues on Appeal

Appellant presents two issues for review. In his first issue, appellant contends that the evidence was legally and factually insufficient to support his conviction for possession of methamphetamine. In his second issue, appellant contends that the accomplice testimony of Anita was legally insufficient to support his conviction.

### Sufficiency of the Evidence

In order to determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson v. State,* 17 S.W.3d 664, 667 (Tex.Crim.App.2000). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State,* 204 S.W.3d 404, 414 (Tex.Crim.App.2006)

(overruling in part *Zuniga v. State*, 144 S.W.3d 477 (Tex.Crim.App.2004)); *Johnson v. State*, 23 S.W.3d 1, 10–11 (Tex.Crim. App.2000); *Cain v. State*, 958 S.W.2d 404, 407–08 (Tex.Crim.App.1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414–15; *Johnson*, 23 S.W.3d at 10–11. The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX.CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

In cases involving unlawful possession of a controlled substance, the State must prove that the accused exercised care, custody, control, or management over the substance and that the accused knew the matter possessed was contraband. TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon Supp.2007); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim.App.2005); *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App.1988). The State does not have to prove the accused had exclusive possession of the contraband; joint possession is sufficient to sustain a conviction. *Cude v. State*, 716 S.W.2d 46, 47 (Tex.Crim.App.1986). When the accused is not shown to have had exclusive possession of the place where the contraband was found, the evidence must affirmatively link the accused to the contraband. *Pollan v. State*, 612 S.W.2d 594, 596 (Tex.Crim.App.1981). The Court of Criminal Appeals has recently stated that the legal issue with respect to such "links" is "whether there was evidence of circumstances, in addition to mere presence, that would adequately justify the conclusion

that the defendant knowingly possessed the substance." *Evans v. State*, 202 S.W.3d 158, 161–62 n. 9 (Tex.Crim.App. 2006).

Factors that may affirmatively link an accused to contraband include the following: (1) whether the accused was present when the search was conducted; (2) whether the contraband was in plain view; (3) whether the accused was in close proximity to and had access to the contraband; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed other contraband or narcotics when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n. 12; *Swarb v. State*, 125 S.W.3d 672, 684 (Tex.App.- Houston [1st Dist.] 2003, pet. dism'd); *Hyett v. State*, 58 S.W.3d 826, 830 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd). No set formula exists to dictate a finding of affirmative links sufficient to support an inference of knowing possession of contraband. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex.App.-Dallas 2003, no pet.). The number of factors present is not as important as the logical force or the degree to which the factors, alone or in combination, tend to affirmatively link the defendant to the contraband. *Bates v. State*, 155 S.W.3d 212, 216–17 (Tex.App.-Dallas 2004, no pet.); *Hurtado v. State*, 881 S.W.2d 738,

743 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd); *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex.App.-Austin 1991, pet. ref'd).

### Evidence at Trial

The State called four witnesses at the guilt/innocence phase of the trial: (1) Department of Public Safety Sergeant James C. Rhodes, (2) Department of Public Safety Lieutenant John Murphy, (3) Department of Public Safety Sergeant Anthony Bennett, and (4) Anita. Appellant called two witnesses at the guilt/innocence phase of the trial: (1) Jones County Probation Officer Glenda Riley and (2) his employer, Ronnie Joe Woodard.

The evidence established that appellant and Anita owned the house at 630 Eighth Street in Hawley and that they had lived there for several years. Three minor children lived at the residence with them: appellant's sixteen-year-old daughter from a previous relationship and appellant and Anita's ten-year-old and seven-year-old daughters. Sergeant Rhodes testified that, in early January 2004, he received information concerning alleged narcotics use by appellant or Anita. Based on the information, Sergeant Rhodes conducted surveillance on the residence at 630 Eighth Street in Hawley. Sergeant Rhodes determined that appellant and Anita lived at the residence, that appellant worked at an apartment complex in Abilene, that appellant drove a white Chevrolet pickup, that Anita worked as a school teacher in Hawley, and that Anita drove a brown or tan SUV. Sergeant Rhodes testified that, during surveillance, he saw appellant's pickup parked at the residence a number of times. Lieutenant Murphy testified that he drove by the residence seven or eight times during the surveillance period and that he saw appellant's pickup at the residence on several of the occasions that he drove by the residence.

On January 12, 2004, Sergeant Rhodes collected nine trash bags from the dumpster at appellant's residence. In the trash bags, Sergeant Rhodes found numerous used syringes that contained a light brown substance that he believed to be methamphetamine. He submitted four syringes to the Department of Public Safety laboratory for testing, and the test results showed that the substances in the syringes contained methamphetamine. During his testimony, Sergeant Rhodes described items-also referred to as precursors-that are used in the manufacturing process for methamphetamine, such as pseudoephedrine tablets, anhydrous ammonia, lithium battery strips, rock salt, and ammonia. Sergeant Rhodes testified that he also found the following items in the trash bags: forty-one empty twenty-four pack pseudoephedrine packages, two dismantled lithium batteries, a plastic milk container containing a brown rock salt solution, rock salt and a sludge product from the use of a HCL generator, and two empty bottles that had contained methyl alcohol.

On January 26, 2004, Sergeant Rhodes collected five trash bags from the dumpster at appellant's residence. He found numerous used syringes in the trash bags and submitted three of the syringes that contained a light brown substance to the Department of Public Safety Laboratory for testing. Test results showed that the substances in the syringes contained methamphetamine. Sergeant Rhodes also found numerous dismantled lithium batteries and a bottle that had been adapted to be a HCL generator in the trash bags.

On January 28, 2004, Sergeant Rhodes obtained a search warrant for the search of appellant's residence. The warrant commanded law officers to arrest appellant and Anita. On January 29, 2004, Sergeant Rhodes and Sergeant Bennett arrested appellant at his place of employ-

ment in Abilene. Sergeant Rhodes and Sergeant Bennett found several packages of pseudoephedrine in appellant's pickup. Lieutenant Murphy, Department of Public Safety Sergeant Jason Graham, and Department of Public Safety Trooper Charles Wheeler arrested Anita at a school in Hawley. During searches of Anita and her vehicle, the officers seized marihuana, a syringe containing a light brown substance believed to be methamphetamine, and a glass smoking pipe.

After the arrests, the officers transported appellant and Anita to their residence, and the officers conducted a search of the residence. Anita was inside the residence during the search; appellant was outside the residence during the search. The officers found and seized a number of items of evidence during the search. In the freezer section of a side-by-side refrigerator that was in the kitchen of the residence, Sergeant Bennett found a bottle containing 130.92 grams of a brown liquid substance that later tested positive for methamphetamine. Sergeant Bennett's testimony showed that he found the bottle containing the methamphetamine on one of the shelves in the freezer and that the bottle was not hidden behind anything. The State introduced into evidence a photograph showing where the bottle was when Sergeant Bennett found it. The photograph demonstrated that the bottle would have been in plain view when the freezer door was open.

The officers also found a container in plain view on the kitchen counter that contained pseudoephedrine tablets that were being soaked in acetone to remove the ephedrine. They found another container on the kitchen counter that also contained pseudoephedrine tablets that were being soaked. The officers also found a container on the kitchen counter that contained numerous packages of Su-

dafed. In the master bedroom, the officers found a syringe containing a light brown substance believed to be methamphetamine, drug paraphernalia, and ephedrine. They also found a spoon with a small piece of cotton in it in the master bedroom. Sergeant Rhodes testified that spoons and cotton are used in connection with syringes for the purpose of injecting methamphetamine. The officers discovered various items that are used in the manufacture of methamphetamine, such as starter fluid and muriatic acid, in the closet in the master bedroom. They also found a container of unused syringes in the same closet. The officers saw men's clothing items and men's cologne in the closet in the master bedroom. Lieutenant Murphy testified that there were numerous men's items throughout the house. The officers found drug paraphernalia and small packets containing substances that later tested positive for methamphetamine in the sixteen-year-old girl's bedroom. The State introduced into evidence photographs of the items that were found during the search.

Lieutenant Murphy testified that he saw appellant outside the residence about an hour after the search began. Lieutenant Murphy said that, at that time, he noticed that appellant had beady eyes and had needle tracks on the inside of his arms, both of which were signs of drug use. During cross-examination, appellant showed his arms to Lieutenant Murphy. Lieutenant Murphy said that there were no fresh needle marks on appellant's arms but that there appeared to be one needle mark scar on appellant's right arm.

Anita testified that appellant slept and lived in the master bedroom of the residence and that she slept in other rooms or, sometimes, on the floor of the residence. She also said that appellant was aware that the methamphetamine and other

seized items were in the house. Anita also testified that, during the three-year period prior to January 29, 2004, appellant had made "quite a bit" of methamphetamine and that she and appellant had used "quite a bit" of methamphetamine. She said that she and appellant had used methamphetamine on a daily basis during that three-year period and that, before the three-year period, they had used it off and on. Anita said that her role in making the methamphetamine was to extract ephedrine from the pseudoephedrine tablets and that appellant's role in the process was to take the extracted ephedrine to another location to "cook it." She also said that the items Sergeant Rhodes seized from the trash bags belonged to appellant and her. Anita also said that she had residual scarring on her arms from injecting methamphetamine and that she did not know why appellant did not have the same type of scarring on his arms.

Woodard testified that he was appellant's employer. He said that he had known appellant all of appellant's life and that appellant did excellent work. He also said that he never saw marks on appellant's arms or any other sign indicating appellant was addicted to or had used methamphetamine. Woodard also said that appellant and Anita had lived at their house on Eighth Street for several years.

Probation Officer Riley testified that appellant was ordered to report to the probation department as a condition of his release on bond in this cause. She said that appellant frequently asked to be tested for drugs and alcohol. She also said that a random urinalysis taken in May 2005 came back negative. Probation Officer Riley also testified that appellant's file indicated that he exhibited no signs of methamphetamine addiction.

*Analysis*

■ After reviewing all of the evidence, we hold that the evidence is both legally and factually sufficient to support the jury's verdict. Although appellant was not in exclusive possession of the place where the officers found the methamphetamine, the circumstances justify the jury's conclusion that appellant exercised care, custody, control, or management over the methamphetamine that was seized from the freezer and that he knew the matter possessed was methamphetamine. The State established affirmative links between appellant and the methamphetamine. The evidence established that appellant owned and lived at the residence. Appellant had lived at the residence for years. Thus, appellant had the right to possess the place where the officers found the methamphetamine. The methamphetamine was in the freezer side of the refrigerator that was in the kitchen of the residence. As a member of the household, appellant would have had access to the freezer. The evidence also established that the methamphetamine was easy to see if the freezer door was open. Additionally, drug paraphernalia and many items used to manufacture methamphetamine were present in the residence, and many of the seized items were in plain view. The containers that were being used in connection with extracting ephedrine were in plain view on the kitchen counter. The officers found a container on the kitchen counter that contained numerous packages of Sudafed. The officers also found a syringe, drug paraphernalia, and ephedrine in the master bedroom and syringes, starter fluid, and muriatic acid in the closet in the master bedroom. They also observed men's items throughout the house and in the closet of the master bedroom. We find that these affirmative links sufficiently linked appellant to the methamphetamine to support his convic-

tion. Anita's testimony provided further evidentiary support for the conviction.

Based on the evidence linking appellant to the methamphetamine, a rational jury could have found beyond a reasonable doubt that appellant knowingly possessed the methamphetamine. Furthermore, the evidence supporting the verdict is not so weak that the verdict is clearly wrong and manifestly unjust nor is the verdict against the great weight and preponderance of the conflicting evidence. We overrule appellant's first issue.

### Accomplice Testimony

In his second issue, appellant contends that Anita's accomplice testimony was legally insufficient to support his conviction. The trial court charged the jury that Anita was an accomplice to the charged offense. Tex.Code Crim. Proc. Ann. art. 38.14 (Vernon 2005) provides as follows:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

It is not necessary that the corroborating evidence directly connect the defendant to the crime or that it be sufficient by itself to establish guilt; it need only tend to connect the defendant to the offense. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim.App.1999). In conducting a sufficiency review under the accomplice-witness rule, a reviewing court must eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim.App.2001). If the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, the requirement of Article 38.14 has been fulfilled. *Cathey*, 992 S.W.2d at 462.

Eliminating Anita's testimony from consideration, the State presented substantial evidence at trial that tended to connect appellant to the offense. As explained above, the State established affirmative links between appellant and the methamphetamine. The State established the affirmative links through the testimony of the officers. The non-accomplice evidence tended to connect appellant to the offense, and, therefore, the State satisfied the requirement of Article 38.14.

Appellant also discusses the law of parties in his second issue. *See* Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 2003). However, the State did not argue that appellant was guilty under the law of parties, and the law of parties has no bearing on this appeal. We overrule appellant's second issue.

### This Court's Ruling

We affirm the judgment of the trial court.