

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00285-CR

JAIME RAMIREZ JR.                                                                    APPELLANT

V.

THE STATE OF TEXAS                                                                        STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

### MEMORANDUM OPINION[1]

----------

Appellant Jaime Ramirez Jr. challenges the sufficiency of the evidence to support his conviction for possessing methamphetamine with intent to distribute. We reverse.

On a tip from an unnamed confidential informant, Tarrant County Narcotics Unit Investigator David Mack Bennett obtained a warrant to search a Fort Worth

---

[1]*See* Tex. R. App. P. 47.4.

apartment and to arrest Appellant in the event he was found possessing methamphetamine.

Officers executed the warrant around noon on February 18, 2009. As soon as their raid van pulled into the apartment-complex parking lot, officers piled out and noticed Appellant, approximately fifty feet from a stairwell, walking with another person toward a car in the parking lot. Some of the officers detained Appellant, securing him in the back of a patrol car, while others climbed the stairs to the second-floor apartment identified in the warrant. Upstairs, they breached the door and entered the two-bedroom apartment, where they encountered three persons—one male and two females—sitting on a couch in a spare bedroom.

After removing the people from the couch, the officers found a clear plastic baggie containing a white crystalline substance on the cushion where the male had been sitting. Near the couch, they found a glass pipe commonly used for smoking drugs. And in a small recessed area of the room they saw a small desk with its center drawer open. In the drawer, they found a substantial quantity of methamphetamine along with paraphernalia commonly associated with its distribution, including numerous small plastic bags and electronic scales. Exiting the spare bedroom, the officers observed faded stenciling on or near the door that read, "no fronting," which, one officer testified at trial means no "giving out of narcotics without payment."

Appellant's name was found in various places throughout the apartment. It appeared twice in the spare bedroom where the drugs were found. First, it was

written in calligraphy on a piece of notebook paper attached to a wall of the recessed area by the desk that contained the drugs.[2] Then, it was found printed at the top of the spare bedroom's closet door.

It was also in the master bedroom on a valentine in the nightstand. And, in the closet of the master bedroom, in a box on a shelf above men's and women's clothing, an officer found Appellant's birth certificate.

Finally, Appellant's name showed up in the kitchen on a notice taped to the refrigerator, advising that the apartment's electricity was to be cut off for non-payment of rent. Appellant's name was on the notice on a line above the words "Name of Resident."

No drugs, other contraband or cash was found on Appellant's person or in the car to which apparently he had been walking when he was detained.

Appellant was indicted, tried, and convicted for possessing with intent to distribute the methamphetamine seized from the drawer of the desk in the apartment's spare bedroom. He was sentenced to forty years' confinement.

---

[2]There is conflicting testimony in the record as to whether this piece of notebook paper with Appellant's name written in calligraphy was found in the spare bedroom or in the master bedroom. We have concluded that it was in the spare bedroom. Detective Bennett testified that State's Exhibit 14, the piece of notebook paper bearing Appellant's name in calligraphy on it, was found in the master bedroom. However, Officer Wing testified that State's Exhibit 14 is the same document he saw on the spare bedroom wall. Moreover, in State's Exhibit 5, a photograph of the recessed area in the spare bedroom where the drugs in the desk were found, State's Exhibit 14 is plainly visible on the wall.

Among other points, Appellant claims that the evidence is legally and factually insufficient to support his conviction because the State failed to adequately link him to the drugs.[3] Because the court of criminal appeals has recently overruled *Clewis*, we review Appellant's sufficiency of the evidence claims under the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *See Brooks v. State*, —S.W.3d—, No. PD-0210-09, 2010 WL 3894613, at *1 (Tex. Crim. App. Oct. 6, 2010) (overruling *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App.1996)).

When deciding whether the evidence is sufficient to support a conviction, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2789; *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). To prove unlawful possession of a controlled substance, the State must show that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Poindexter*, 153 S.W.3d at 405; *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995). Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the whole of the so-called 'affirmative-links' rule." *Poindexter*,

---

[3]Because of our disposition of Appellant's first point, we need not address his others. *See* Tex. R. App. P. 47.1.

4

153 S.W.3d at 405–06; *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

The "affirmative links rule" is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. *Poindexter*, 153 S.W.3d at 406; *see United States v. Phillips*, 496 F.2d 1395, 1397 (5th Cir. 1974) ("Proof of mere proximity to contraband is not sufficient to establish actual constructive possession or the element of knowledge."), *cert. denied*, 422 U.S. 1056 (1975). The rule simply restates the common-sense notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house. *Poindexter*, 153 S.W.3d at 406 (citing *United States v. Smith*, 930 F.2d 1081, 1086–87 (5th Cir. 1991)). Thus, the court of criminal appeals has formulated the rule that "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Poindexter*, 153 S.W.3d at 406; *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981).

The State argues that it sufficiently linked Appellant to the methamphetamine in this case because it proved that he had a right to possess the apartment where the drugs were found. We agree that the evidence links Appellant to the apartment, but that does not resolve the issue. Even if the

evidence shows that Appellant had a right to possess the apartment, it does not show that his possession was exclusive. To the contrary, the record shows that three other people were in the apartment near the drugs found in the open drawer when the warrant was executed, and that one of those people, Rebecca Gonzalez, was a resident of the apartment. Further, Appellant testified that another person, Juan Mariscol, lived there. Finally, although a former apartment manager for the complex testified that Appellant lived at the apartment at the time of his arrest and that his name "was on my computer," she also testified that there was no actual lease for that particular apartment. Under these circumstances, it was the State's burden to show additional independent facts and circumstances affirmatively linking Appellant to the methamphetamine seized from the apartment. *See Poindexter*, 153 S.W.3d at 406; *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988); *Deshong*, 625 S.W.2d at 329.

Factors that may affirmatively link an accused to contraband include (1) whether the accused was present when the search was conducted; (2) whether the contraband was in plain view; (3) whether the accused was in close proximity to and had access to the contraband; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed other contraband or narcotics when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was

6

present; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); *Isbell v. State*, 246 S.W.3d 235, 238 (Tex. App.—Eastland 2007, no pet.). No set formula exists to dictate a finding of affirmative links sufficient to support an inference of knowing possession of contraband. *Isbell*, 246 S.W.3d at 238; *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). The number of factors present is not as important as the logical force or the degree to which the factors, alone or in combination, tend to affirmatively link the defendant to the contraband. *Isbell*, 246 S.W.3d at 238; *Bates v. State*, 155 S.W.3d 212, 216–17 (Tex. App.—Dallas, no pet.); *see Evans*, 202 S.W.3d at 162.

Applying these factors to the record before us reveals that very few of them weigh in the State's favor. Appellant was present when the search was executed, but not where the drugs were found. He was fifty feet from the bottom of a stairwell, walking toward a car in the parking lot, and the drugs were in the drawer of a desk in the spare bedroom of an apartment on the second floor. Viewed in the light most favorable to the verdict, this factor weighs very slightly, if at all, in the State's favor.

Once inside the apartment, officers noticed the desk in a recessed area of the spare bedroom with the drugs in plain view in an open drawer. But the State

7

presented no evidence showing that they were plainly visible to Appellant, who was outside downstairs in the parking lot. This factor weighs against the State. Similarly, there was no evidence that Appellant was in close proximity to and had access to the drugs when the warrant was executed. This factor likewise weighs against the State.

The State presented no evidence that Appellant was under the influence of or possessed other contraband or drugs or made incriminating statements when he was arrested. There is no evidence in the record that he attempted to flee or made furtive gestures. There is no evidence that there was any odor of contraband. These factors all weigh against the State.

There is evidence that other contraband or drug paraphernalia was present in the spare bedroom of the apartment. And while there is evidence that Appellant had a right to possess the apartment from which the drugs were seized, there is no evidence that any right he had to possess the area where they were found was his alone. Still, this factor favors the State.

There is evidence that the place where the drugs were found was enclosed. However, under the circumstances, this factor has no weight for or against the State. Also, there is no evidence that Appellant was found with a large amount of cash; and there is no evidence that his conduct indicated a consciousness of guilt. Therefore, these factors do not support the State's position.

8

Considering all these factors, the cumulative logical force is not enough to support a rational juror's finding beyond a reasonable doubt that Appellant knowingly possessed the drugs in this case. Still, these are simply some factors which may circumstantially establish the sufficiency of the evidence to prove knowing possession. *Evans*, 202 S.W.3d at 162 n.12. They are not a litmus test. *Id*.

Scouring the entire record in the light most favorable to the prosecution, though, reveals some testimony indicating that Appellant possessed the drugs. This evidence came in through the *opinions* of two of the police officers who had participated in the raid. First, Detective Bennett, who was still in training as a narcotics investigator at the time of Appellant's arrest, testified as follows:

> Q. By Ms. Bruner [for the State]) *Did you form an opinion as to whether this Defendant, Mr. Ramirez, possessed the suspected controlled substance that you found at the apartment on that date?*
>
> A. Yes, I did.
>
> Q. What was that opinion?
>
> A. That Mr. Ramirez was in possession of a large quantity of suspected methamphetamine and that he was involved in the distribution of that methamphetamine.
>
> Q. *What factors led you to forming this opinion?*
>
> A. The large quantity he had, the number of baggies he had for individual sale, electronic scales.
>
> . . . .
>
> Q. Do you know whether any investigators on scene that day spoke with an apartment manager at the complex?

A. Yes, ma'am, they did.

Q. Without talking about what was actually said, do you recall who it was that spoke to that apartment manager?

A. I believe Investigator Tim Wing spoke with the apartment manager and got a written statement from her as well.

Q. And did the information that she provided to you factor into your opinion that this Defendant was, in fact, involved in – – was, in fact, possessing the controlled substance with the intent to deliver it?

A. Based on the information we had, it solidified the fact that the Defendant was a resident and was in possession of the contents of the apartment 214.

(Emphasis added.)

Similarly, the State presented the following from Officer Timothy Wing:

Q. [by the prosecutor]  Officer Wing, based on your experience and training involving narcotics investigations, *did you form an opinion that day as to whether or not the Defendant Jaime Ramirez was in possession of narcotics?*

A. Yes.

[Defense objections overruled.]

Q. Okay.  What was your opinion, Officer Wing?

A. That Mr. Ramirez was in possession of a controlled substance with intent to deliver that controlled substance.

Q. *And what was the basis for you reaching that opinion?*

A. Based on the quantity of the controlled substance found, packaging materials.

(Emphasis added.)

10

Viewed in the light most favorable to the verdict, this testimony supports a finding that whoever possessed the drugs did so with the intent to deliver them. However, the reasoning offered by the officers does not support their ultimate conclusion that Appellant was the one who possessed the drugs.

With the greater quantity of the affirmative-links factors weighing against the State and with very little of the logical force of those factors supporting the verdict, the issue in this case comes down to whether an officer's opinion on the essential element of whether an accused knowingly possessed drugs is sufficient to support a rational jury's finding on the issue beyond a reasonable doubt.

In driving while intoxicated cases it has been held that an officer's opinion testimony based upon experience and the observed facts that a defendant was intoxicated is sufficient to establish the element of intoxication. *See, e.g.*, *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979) (panel op.) But these cases cannot stand for the proposition that an officer's opinion that a defendant was intoxicated is, without supporting facts, *by itself* sufficient to establish the element of intoxication because the officer's opinion in that case was rationally based upon objective facts admitted in evidence. As Judge Davis wrote for the panel in *Annis*:

> Trooper Martin, the arresting officer, testified that he formed an opinion as to appellant's intoxication prior to and independent of the "breathalyzer" test. Supporting this independent opinion, Trooper Martin stated that while following appellant's vehicle he noticed the vehicle swerve across a lane-dividing stripe several times. When Trooper Martin attempted a traffic stop, appellant pulled into the parking lot of a tavern and parked. Approaching appellant, Trooper

11

Martin observed that appellant appeared disorderly and that his speech was "mush-mouthed." Appellant's eyes were red and his breath smelled of alcohol. Further, Appellant swayed from side to side when walking or standing.

Trooper Martin was an experienced Texas Highway Patrol Officer and had on numerous occasions observed persons under the influence of alcoholic beverages. Based on his experience and the observed facts, Trooper Martin concluded that appellant was intoxicated while operating a motor vehicle. This testimony, considered in the light most favorable to the verdict, is sufficient to establish the element of intoxication.

*Annis*, 578 S.W.2d at 407; *see also Whisenant v. State*, 557 S.W.2d 102, 105 (Tex. Crim. App. 1977) (officer gave opinion that appellant was intoxicated at the time of his arrest, and testified that appellant drove erratically, smelled strongly of an alcoholic beverage, appeared sleepy, slurred his words, and admitted that he had been "drinking" at home); *Irion v. State*, 703 S.W.2d 362, 364 (Tex. App.—Austin 1986, no pet.) (arresting officer testified to appellant's weaving while driving, breath smelling of alcohol, and failing sobriety tests; another officer at the scene thought appellant was "probably intoxicated;" a jailer at the booking desk and the officer in charge of the jail both remembered appellant's belligerence and testified that they thought she was intoxicated).

Here, with no objective facts in the record to support the officers' opinions that Appellant was in possession of the drugs found in the apartment, we hold that no rational juror could have relied upon those opinions to find beyond a reasonable doubt that he possessed them. And considering the paucity of the affirmative-links factors and the weakness of their logical force to support the

12

verdict, we hold that the State has failed to prove sufficient facts and circumstances to affirmatively link Appellant to the drugs seized in this case. *See Poindexter*, 153 S.W.3d at 406; *Deshong*, 625 S.W.2d at 329. Accordingly, we sustain Appellant's first point of error, reverse the trial court's judgment, and render a judgment of acquittal. *See* Tex. R. App. 43.2(c), 51.2(d); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

PER CURIAM

PANEL:  GABRIEL, DAUPHINOT, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  November 18, 2010