02-09-285-CR















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00285-CR 

 

 


 
 
 Jaime Ramirez Jr.
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM THE
396th District Court OF Tarrant
COUNTY

------------

MEMORANDUM OPINION[1]

----------

          Appellant Jaime Ramirez Jr. challenges
the sufficiency of the evidence to support his conviction for possessing
methamphetamine with intent to distribute. 
We reverse.

          On a tip from an unnamed confidential
informant, Tarrant County Narcotics Unit Investigator David Mack Bennett
obtained a warrant to search a Fort Worth apartment and to arrest Appellant in
the event he was found possessing methamphetamine.

Officers
executed the warrant around noon on February 18, 2009.  As soon as their raid van pulled into the
apartment-complex parking lot, officers piled out and noticed Appellant,
approximately fifty feet from a stairwell, walking with another person toward a
car in the parking lot.  Some of the officers
detained Appellant, securing him in the back of a patrol car, while others
climbed the stairs to the second-floor apartment identified in the warrant.  Upstairs, they breached the door and entered
the two-bedroom apartment, where they encountered three persons—one male and two
females—sitting on a couch in a spare bedroom.

          After removing the people from the
couch, the officers found a clear plastic baggie containing a white crystalline
substance on the cushion where the male had been sitting.  Near the couch, they found a glass pipe
commonly used for smoking drugs.  And in
a small recessed area of the room they saw a small desk with its center drawer
open.  In the drawer, they found a
substantial quantity of methamphetamine along with paraphernalia commonly
associated with its distribution, including numerous small plastic bags and
electronic scales.  Exiting the spare
bedroom, the officers observed faded stenciling on or near the door that read, “no fronting,” which, one officer testified at trial means no
“giving out of narcotics without payment.” 

          Appellant’s name was found in various places
throughout the apartment.  It appeared twice
in the spare bedroom where the drugs were found.  First, it was written in calligraphy on a
piece of notebook paper attached to a wall of the recessed area by the desk that
contained the drugs.[2]  Then, it was found printed at the top of the
spare bedroom’s closet door.

          It was also in the master bedroom on a
valentine in the nightstand.  And, in the
closet of the master bedroom, in a box on a shelf above men’s and women’s clothing,
an officer found Appellant’s birth certificate.

          Finally, Appellant’s name showed up in
the kitchen on a notice taped to the refrigerator, advising that the
apartment’s electricity was to be cut off for non-payment of rent.  Appellant’s name was on the notice on a line above
the words “Name of Resident.”

          No drugs, other contraband or cash was
found on Appellant’s person or in the car to which apparently he had been
walking when he was detained.

          Appellant was indicted, tried, and
convicted for possessing with intent to distribute the methamphetamine seized
from the drawer of the desk in the apartment’s spare bedroom.  He was sentenced to forty years’ confinement.

          Among other points, Appellant claims
that the evidence is legally and factually insufficient to support his
conviction because the State failed to adequately link him to the drugs.[3]  Because the court of criminal appeals has
recently overruled Clewis,
we review Appellant’s sufficiency of the evidence claims under the standard set
out in Jackson v. Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2789 (1979).  See Brooks v. State, —S.W.3d—, No.
PD-0210-09, 2010 WL 3894613, at *1 (Tex. Crim. App. Oct. 6, 2010) (overruling Clewis v. State, 922 S.W.2d 126 (Tex. Crim.
App.1996)).

          When deciding whether the evidence is
sufficient to support a conviction, we assess all the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the
crime beyond a reasonable doubt.  Jackson, 443 U.S. at
318–19, 99 S. Ct. at 2789; Poindexter v.
State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).  To prove unlawful possession of a controlled
substance, the State must show that: (1) the accused exercised control,
management, or care over the substance; and (2) the accused knew the matter
possessed was contraband.  Poindexter, 153 S.W.3d at  405; Joseph v. State, 897 S.W.2d 374, 376
(Tex. Crim. App. 1995).  Whether this
evidence is direct or circumstantial, “it must establish, to the requisite
level of confidence, that the accused’s connection
with the drug was more than just fortuitous. 
This is the whole of the so-called ‘affirmative-links’ rule.”  Poindexter, 153 S.W.3d at 405–06; Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

          The “affirmative links rule” is
designed to protect the innocent bystander from conviction based solely upon
his fortuitous proximity to someone else’s drugs.  Poindexter,
153 S.W.3d at 406; see United States v.
Phillips, 496 F.2d 1395, 1397 (5th Cir. 1974) (“Proof of mere proximity to
contraband is not sufficient to establish actual constructive possession or the
element of knowledge.”), cert. denied,
422 U.S. 1056 (1975).  The rule simply
restates the common-sense notion that a person—such as a father, son, spouse,
roommate, or friend—may jointly possess property like a house but not
necessarily jointly possess the contraband found in that house.  Poindexter, 153 S.W.3d at 406 (citing United States v. Smith, 930 F.2d 1081, 1086–87 (5th Cir. 1991)).  Thus, the court of criminal appeals has
formulated the rule that “[w]hen the accused is not in exclusive possession of
the place where the substance is found, it cannot be concluded that the accused
had knowledge of and control over the contraband unless there are additional
independent facts and circumstances which affirmatively link the accused to the
contraband.”  Poindexter, 153 S.W.3d at 406; Deshong v. State, 625 S.W.2d 327, 329 (Tex.
Crim. App. 1981).

          The State argues that it sufficiently
linked Appellant to the methamphetamine in this case because it proved that he
had a right to possess the apartment where the drugs were found.  We agree that the evidence links Appellant to
the apartment, but that does not resolve the issue.  Even if the evidence shows that Appellant had
a right to possess the apartment, it does not show that his possession was
exclusive.  To the contrary, the record shows
that three other people were in the apartment near the drugs found in the open
drawer when the warrant was executed, and that one of those people, Rebecca
Gonzalez, was a resident of the apartment.  Further, Appellant testified that another
person, Juan Mariscol, lived there.  Finally, although a former apartment manager
for the complex testified that Appellant lived at the apartment at the time of
his arrest and that his name “was on my computer,” she also testified that
there was no actual lease for that particular apartment.  Under these circumstances, it was the State’s
burden to show additional independent facts and circumstances affirmatively
linking Appellant to the methamphetamine seized from the apartment.  See
Poindexter, 153 S.W.3d at 406; Martin
v. State, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988); Deshong, 625 S.W.2d
at 329.

          Factors that may affirmatively link an
accused to contraband include (1) whether the accused was present when the
search was conducted; (2) whether the contraband was in plain view; (3) whether
the accused was in close proximity to and had access to the contraband; (4)
whether the accused was under the influence of narcotics when arrested; (5)
whether the accused possessed other contraband or narcotics when arrested; (6)
whether the accused made incriminating statements when arrested; (7) whether
the accused attempted to flee; (8) whether the accused made furtive gestures;
(9) whether there was an odor of contraband; (10) whether other contraband or
drug paraphernalia was present; (11) whether the accused owned or had the right
to possess the place where the drugs were found; (12) whether the place where
the drugs were found was enclosed; (13) whether the accused was found with a
large amount of cash; and (14) whether the conduct of the accused indicated a
consciousness of guilt.  Evans v. State, 202
S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); Isbell v. State, 246 S.W.3d 235, 238 (Tex. App.—Eastland 2007, no
pet.).  No set formula exists to
dictate a finding of affirmative links sufficient to support an inference of
knowing possession of contraband.  Isbell, 246 S.W.3d at
238; Taylor v. State, 106 S.W.3d 827,
831 (Tex. App.—Dallas 2003, no pet.). 
The number of factors present is not as important as the logical force
or the degree to which the factors, alone or in combination, tend to
affirmatively link the defendant to the contraband.  Isbell,
246 S.W.3d at 238; Bates v. State,
155 S.W.3d 212, 216–17 (Tex. App.—Dallas, no pet.); see Evans, 202 S.W.3d at 162.

          Applying these factors to the record
before us reveals that very few of them weigh in the State’s favor.  Appellant was present when the search was
executed, but not where the drugs were found. 
He was fifty feet from the bottom of a stairwell, walking toward a car
in the parking lot, and the drugs were in the drawer of a desk in the spare
bedroom of an apartment on the second floor. 
Viewed in the light most favorable to the verdict, this factor weighs
very slightly, if at all, in the State’s favor.

          Once inside the apartment, officers noticed
the desk in a recessed area of the spare bedroom with the drugs in plain view
in an open drawer.  But the State
presented no evidence showing that they were plainly visible to Appellant, who
was outside downstairs in the parking lot. 
This factor weighs against the State. 
Similarly, there was no evidence that Appellant was in close proximity
to and had access to the drugs when the warrant was executed.  This factor likewise weighs against the
State.

          The State presented no evidence that
Appellant was under the influence of or possessed other contraband or drugs or
made incriminating statements when he was arrested.  There is no evidence in the record that he attempted
to flee or made furtive gestures.  There is
no evidence that there was any odor of contraband.  These factors all weigh against the State.

          There is evidence that other
contraband or drug paraphernalia was present in the spare bedroom of the
apartment.  And while there is evidence
that Appellant had a right to possess the apartment from which the drugs were seized,
there is no evidence that any right he had to possess the area where they were
found was his alone.  Still, this factor
favors the State.

          There is evidence that the place where
the drugs were found was enclosed.  However,
under the circumstances, this factor has no weight for or against the
State.  Also, there is no evidence that Appellant
was found with a large amount of cash; and there is no evidence that his
conduct indicated a consciousness of guilt. 
Therefore, these factors do not support the State’s position.

          Considering all these factors, the cumulative
logical force is not enough to support a rational juror’s finding beyond a
reasonable doubt that Appellant knowingly possessed the drugs in this
case.  Still, these are simply some
factors which may circumstantially establish the sufficiency of the evidence to
prove knowing possession.  Evans, 202 S.W.3d at
162 n.12.  They are not a litmus
test.  Id.

          Scouring the entire record in the
light most favorable to the prosecution, though, reveals some testimony indicating
that Appellant possessed the drugs.  This
evidence came in through the opinions
of two of the police officers who had participated in the raid.  First, Detective Bennett, who was still in
training as a narcotics investigator at the time of Appellant’s arrest,
testified as follows:

          Q. By
Ms. Bruner [for the State])  Did you form an opinion as to whether this
Defendant, Mr. Ramirez, possessed the suspected controlled substance that you
found at the apartment on that date?

 

          A.  Yes, I did.

          Q. What was that opinion?

          A.  That
Mr. Ramirez was in possession of a large quantity of suspected methamphetamine
and that he was involved in the distribution of that methamphetamine.

 

          Q. What
factors led you to forming this opinion?

          A.  The
large quantity he had, the number of baggies he had for individual sale, electronic
scales.

 

. .
. .  

          Q. Do
you know whether any investigators on scene that day spoke with an apartment
manager at the complex?

 

          A.  Yes, ma’am, they did.

          Q. Without
talking about what was actually said, do you recall who
it was that spoke to that apartment manager?

 

          A.  I
believe Investigator Tim Wing spoke with the apartment manager and got a
written statement from her as well.

 

          Q. And
did the information that she provided to you factor into your opinion that this
Defendant was, in fact, involved in – – was, in fact, possessing the controlled
substance with the intent to deliver it?

 

          A.  Based
on the information we had, it solidified the fact that the Defendant was a
resident and was in possession of the contents of the apartment 214.

 

(Emphasis
added.) 

          Similarly, the State presented the
following from Officer Timothy Wing:

          Q. [by
the prosecutor]  Officer Wing, based on
your experience and training involving narcotics investigations, did you form an opinion that day as to
whether or not the Defendant Jaime Ramirez was in possession of narcotics?

 

          A.  Yes.

[Defense objections overruled.]

          Q. Okay. 
What was your opinion, Officer Wing?

          A.  That
Mr. Ramirez was in possession of a controlled substance with intent to deliver
that controlled substance.

 

          Q. And what
was the basis for you reaching that opinion?

          A.  Based
on the quantity of the controlled substance found, packaging materials.

 

(Emphasis
added.) 

          Viewed in the light most favorable to
the verdict, this testimony supports a finding that whoever possessed the drugs
did so with the intent to deliver them. 
However, the reasoning offered by the officers does not support their
ultimate conclusion that Appellant was the one who possessed the drugs.

          With the greater quantity of the affirmative-links
factors weighing against the State and with very little of the logical force of
those factors supporting the verdict, the issue in this case comes down to
whether an officer’s opinion on the essential element of whether an accused
knowingly possessed drugs is sufficient to support a rational jury’s finding on
the issue beyond a reasonable doubt.

          In driving while intoxicated cases it
has been held that an officer’s opinion testimony based upon experience and the
observed facts that a defendant was intoxicated is sufficient to establish the
element of intoxication.  See, e.g., Annis v. State,
578 S.W.2d 406, 407 (Tex. Crim. App. 1979) (panel op.)  But these cases cannot stand for the
proposition that an officer’s opinion that a defendant was intoxicated is,
without supporting facts, by itself
sufficient to establish the element of intoxication because the officer’s opinion
in that case was rationally based
upon objective facts admitted in evidence. 
As Judge Davis wrote for the panel in Annis:

Trooper Martin, the
arresting officer, testified that he formed an opinion as to appellant’s
intoxication prior to and independent of the “breathalyzer” test.  Supporting this
independent opinion, Trooper Martin stated that while following appellant's
vehicle he noticed the vehicle swerve across a lane-dividing stripe several
times.  When Trooper Martin attempted a
traffic stop, appellant pulled into the parking lot of a tavern and parked.  Approaching appellant, Trooper Martin observed
that appellant appeared disorderly and that his speech was “mush-mouthed.”  Appellant’s eyes were red and his breath
smelled of alcohol.  Further, Appellant
swayed from side to side when walking or standing.

 

          Trooper Martin was an experienced
Texas Highway Patrol Officer and had on numerous occasions observed persons
under the influence of alcoholic beverages.  Based on his experience and the observed
facts, Trooper Martin concluded that appellant was intoxicated while operating
a motor vehicle.  This testimony,
considered in the light most favorable to the verdict, is sufficient to establish
the element of intoxication.

 

Annis,
578 S.W.2d at 407; see also Whisenant v. State, 557 S.W.2d 102, 105 (Tex. Crim.
App. 1977) (officer gave opinion that appellant was intoxicated at the time of
his arrest, and testified that appellant drove erratically, smelled strongly of
an alcoholic beverage, appeared sleepy, slurred his words, and admitted that he
had been “drinking” at home); Irion v.
State, 703 S.W.2d 362, 364 (Tex. App.—Austin 1986, no pet.) (arresting
officer testified to appellant’s weaving while driving, breath smelling of
alcohol, and failing sobriety tests; another officer at  the scene thought appellant was “probably
intoxicated;” a jailer at the booking desk and the officer in charge of the jail
both remembered appellant’s belligerence and testified that they thought she
was intoxicated).

          Here, with no objective facts in the
record to support the officers’ opinions that Appellant was in possession of
the drugs found in the apartment, we hold that no rational juror could have
relied upon those opinions to find beyond a reasonable doubt that he possessed
them.  And considering the paucity of the
affirmative-links factors and the weakness of their logical force to support
the verdict, we hold that the State has failed to prove sufficient facts and
circumstances to affirmatively link Appellant to the drugs seized in this
case.  See Poindexter, 153 S.W.3d at 406; Deshong, 625
S.W.2d at 329.  Accordingly, we sustain
Appellant’s first point of error, reverse the trial court’s judgment, and
render a judgment of acquittal.  See Tex. R. App. 43.2(c), 51.2(d); Guevara v. State, 152 S.W.3d 45, 49
(Tex. Crim. App. 2004).

 

PER CURIAM

 

PANEL: 
GABRIEL, DAUPHINOT, and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  November 18, 2010











[1]See Tex. R. App. P. 47.4.





[2]There
is conflicting testimony in the record as to whether this piece of notebook
paper with Appellant’s name written in calligraphy was found in the spare
bedroom or in the master bedroom.  We
have concluded that it was in the spare bedroom.  Detective Bennett testified that State’s
Exhibit 14, the piece of notebook paper bearing Appellant’s name in calligraphy
on it, was found in the master bedroom. 
However, Officer Wing testified that State’s Exhibit 14 is the same
document he saw on the spare bedroom wall. 
Moreover, in State’s Exhibit 5, a photograph of the recessed area in the
spare bedroom where the drugs in the desk were found, State’s Exhibit 14 is
plainly visible on the wall.





[3]Because of our
disposition of Appellant’s first point, we need not address his others.  See
Tex. R. App. P. 47.1.