

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00117-CR

CHRISTOPHER YARBOROUGH                                    APPELLANT

V.

THE STATE OF TEXAS                                            STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 1313733D

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

After a bench trial, Appellant was convicted of possession with intent to deliver methamphetamine in an amount of one gram or more but less than four grams. *See* Tex. Health & Safety Code Ann. 481.112(c) (West 2010). The trial court sentenced him to twenty years' confinement. In four points, Yarbrough

---

[1]*See* Tex. R. App. P. 47.4.

complains of the denial of his motion to suppress, the sufficiency of the evidence, and the trial court's withdrawal of its oral ruling granting Yarbrough's motion for directed verdict. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Yarborough and his girlfriend Christi Jo Bass lived together in an apartment in Arlington, Texas. Police received a tip from a confidential informant (CI) that Yarborough and Bass were selling methamphetamine from the apartment. Police arranged for the CI to make a controlled buy of methamphetamine at the apartment, and the CI purchased methamphetamine from Bass at the apartment. Detective Eric Curtis of the Tarrant County Sheriff's Office obtained a warrant to search the apartment. Detective Curtis, along with several other officers, executed the warrant a few hours later.

Seven people, including Yarborough and Bass, were inside the apartment when the police executed the search warrant. The apartment had three bedrooms; police determined that Yarborough and Bass shared one bedroom based on items found in the bedroom connecting them to that room and based on interviews conducted by police. Police found two safes underneath the bed in that bedroom. The larger safe did not contain any drugs or drug paraphernalia. The smaller safe contained a digital scale, fifty to one hundred small plastic baggies, and 3.55 grams of methamphetamine. The phrase "Boss + CJo"—which police learned were names for Yarborough and Bass—was handwritten with a hot pink marker on the back of the digital scale. Police also found two

2

syringes filled with liquid methamphetamine inside a dresser drawer in that bedroom. Police searched the seven individuals and found 27.92 grams of methamphetamine in a purse belonging to one of the individuals, Cindy Barton. Yarborough had $650 in cash in his pocket.

Yarborough and three other individuals—Christi Jo Bass, Cindy Barton, and Brian Perry—were arrested for possession of a controlled substance with the intent to deliver.

### III. MOTION TO SUPPRESS

In his first point, Yarborough argues that the trial court abused its discretion by denying his motion to suppress the fruits of the search warrant because the search warrant affidavit was vague and ambiguous.

A magistrate may not issue a search warrant without first finding "probable cause" that a particular item will be found at a particular location. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010). Probable cause for a search warrant exists if, under the totality of the circumstances presented to the magistrate, there is at least a "fair probability" or "substantial chance" that contraband or evidence of a crime will be found at the specified location. *Illinois v. Gates*, 462 U.S. 213, 238, 243 n.13, 103 S. Ct. 2317, 2332, 2335 n.13 (1983); *Flores*, 319 S.W.3d at 702. In reviewing a magistrate's decision to issue a warrant, we will uphold the magistrate's probable cause determination "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236, 103 S. Ct. at

3

2331; *see State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). Both appellate courts and trial courts alike must give great deference to a magistrate's implicit finding of probable cause. *McLain*, 337 S.W.3d at 271.

In assessing the sufficiency of an affidavit for a search warrant, the reviewing court is limited to the four corners of the affidavit. *Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 921 (1993). The reviewing court should interpret the affidavit in a common-sense and realistic manner, recognizing that the magistrate was permitted to draw reasonable inferences. *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006). The reviewing court should not analyze the affidavit in a hyper-technical manner. *McLain*, 337 S.W.3d at 271.

In the affidavit in support of the search warrant in this case, Detective Curtis stated that the CI had recently notified him that Yarborough and Bass were distributing methamphetamine from the Arlington apartment. Detective Curtis stated that he had met with the CI "[w]ithin the past 24 to 72 hours" and that the CI had stated that the CI could purchase methamphetamine at the apartment. The Tarrant County Sheriff's Office Narcotics/Vice Unit arranged for a controlled buy, searched the CI's person and vehicle for contraband and money prior to the controlled buy, and sent the CI to the apartment to purchase methamphetamine with departmental funds. The CI purchased a useable amount of methamphetamine from Bass at the apartment. Detective Curtis stated, "While inside of the room, the CI observed several plastic bags with a crystal like

4

substance inside of them ready for distribution. The CI knew the crystal like substance to be methamphetamine." The substance that the CI purchased at the apartment tested positive for methamphetamine. The affidavit also stated that the CI had told Detective Curtis that "within the last 24 to 72 hours, [the CI] observed . . . Yarbrough [sic] . . . within the suspected place and to be in possession of a substance [that the CI] recognized to be methamphetamine; the substance appeared to be packaged for distribution."

Detective Curtis stated in his affidavit that he believed the CI to be credible and reliable. Detective Curtis alleged,

> Affiant is aware that officers of the Tarrant County Sheriff's Office Narcotics Unit have utilized said Confidential Informant to make covered buys that have led to narcotics seizures and/or arrests two times in the recent past. Affiant is aware that said Confidential Informant has demonstrated during these past investigations the ability to accurately recognize illegal narcotics such as methamphetamine. Those same seized substances were tested by authorized chemists, and/or a presumptive test, and found to be controlled substances. Affiant is aware that officers of the Tarrant County Sheriff's Office Narcotics Unit have verified and/or corroborated information provided by said Confidential Informant during the past investigations and found it to be true and correct. Affiant requests that the identity of said Confidential Informant remain anonymous for his/her safety, and for the success of other ongoing narcotics investigations.

Detective Curtis also stated in his affidavit that the FBI had identified Yarborough as a member of the Aryan Brotherhood. He requested authorization to enter the apartment without first knocking and announcing the officers' presence and purpose because "to do so would be futile, dangerous, and otherwise inhibit the effective investigation of the offense." In support of his request, he stated that

5

the Aryan Brotherhood is a violent street gang with a history of violence against police officers.

On appeal, as he did at the suppression hearing, Yarborough complains that the affidavit fails to state how the CI knew that Bass and Yarborough were selling methamphetamine, that the officers did not witness the controlled buy and had to rely on the CI's statements of what the CI saw in the apartment, and that Detective Curtis could not rely on other officers' determinations that the CI had been credible in the past. But reading the affidavit as a whole, as we must, and considering all of the facts in the affidavit along with reasonable inferences from those facts, we hold that the facts stated in the affidavit were sufficient to support the magistrate's determination that there was a fair probability that methamphetamine would be found in the apartment. *See Gates*, 462 U.S. at 238, 103 S. Ct. at 2332; *McLain*, 337 S.W.3d at 273.

Information provided by an informant must contain some indicia of reliability or be reasonably corroborated by police before it can be used to justify a search. *Gates*, 462 U.S. at 242, 103 S. Ct. at 2334. The CI here provided a specific reason for the CI's belief that Yarborough and Bass were selling methamphetamine from the apartment—the CI had observed Yarborough in the apartment with methamphetamine that appeared to be packaged for distribution and stated that the CI could purchase methamphetamine at the apartment. And Detective Curtis stated that he had determined that the CI was credible and reliable based on other officers' dealings with this CI in the past; Detective Curtis

could rely on other officers' determinations that the CI was credible. *See, e.g.*, *Gish v. State*, 606 S.W.2d 883, 886 (Tex. Crim. App. [Panel Op.] 1980) ("Observations reported to the affiant by other officers engaged in the investigation can constitute a reliable basis for issuing a warrant."); *Blake v. State*, 125 S.W.3d 717, 727 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (rejecting claim that officer could not rely on another officer's assertions that an informant was reliable and credible as support for a search warrant). Detective Curtis corroborated the information provided by the CI by conducting a controlled buy in which the CI purchased a useable amount of methamphetamine at the apartment. *See Jones v. State*, 364 S.W.3d 854, 857, 862 (Tex. Crim. App.) (holding that supporting affidavit in which officer stated that an informant had recently told officer that drugs were present at residence and then conducted a controlled buy using a second informant provided probable cause justifying search warrant), *cert. denied*, 133 S. Ct. 370 (2012). Although the affidavit does not state whether any officer maintained surveillance on the informant during the controlled buy, it is not necessary for an officer to have done so to present a magistrate with sufficient facts to reasonably conclude that a search of the apartment would probably reveal methamphetamine and evidence of its distribution, especially in light of Detective Curtis's statements regarding the CI's credibility. *See, e.g.*, *State v. Griggs*, 352 S.W.3d 297, 305 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *cf. State v. Ozuna*, 88 S.W.3d 307, 313 (Tex. App.—San Antonio 2002, pet. ref'd) (upholding suppression of evidence where search

7

warrant affidavit contained no evidence that informants had been used in the past and proven to be reliable).

Reviewing the entirety of the information contained in Detective Curtis's affidavit, we hold that the trial court did not err by denying Yarborough's motion to suppress based on the issuing magistrate's determination that the search warrant affidavit contained sufficient facts to justify a conclusion that a search of the apartment would probably uncover methamphetamine and evidence of its distribution. *See McLain*, 337 S.W.3d at 271. We overrule Yarborough's first point.

## IV. SUFFICIENCY OF THE EVIDENCE

In his second point, Yarborough argues that the evidence is insufficient to support his conviction. He argues that the evidence failed to show that he actually possessed a controlled substance and that the only evidence tending to show his possession was the uncorroborated testimony of Bass.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to

8

draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

To prove possession, the State must prove that the accused (1) exercised actual care, custody, control, or management over the substance and (2) knew that the matter possessed was a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.002(38) (West Supp. 2014); Tex. Penal Code Ann. § 1.07(a)(39) (West Supp. 2014); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). When the accused does not have actual possession of the controlled substance or exclusive possession of the location where the controlled substance was found, additional independent facts or circumstances connecting

9

or linking the accused to the knowing possession of the contraband must support a conclusion that the accused had possession over the contraband. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). This is because, whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the contraband was more than fortuitous. *Evans*, 202 S.W.3d at 161. The "affirmative links rule" is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. *Poindexter*, 153 S.W.3d at 405–06.

Relevant non-exclusive links tending to connect a defendant to knowing possession include (1) whether the defendant was present when the search was conducted, (2) whether the contraband was in plain view, (3) whether the contraband was in close proximity to and accessible by the defendant, (4) whether the defendant was under the influence of narcotics when arrested, (5) whether the defendant possessed other contraband or narcotics when arrested, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia was present, (11) whether the accused owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether the accused was found with a large amount of cash, and (14) whether the conduct of the accused indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12;

*Isbell v. State*, 246 S.W.3d 235, 238 (Tex. App.—Eastland 2007, no pet.). It is not the number of links that is dispositive but the logical force of all of the evidence. *Evans*, 202 S.W.3d at 162.

Yarborough complains on appeal that the only evidence connecting him to the drugs found in the apartment was the uncorroborated testimony of his co-defendant, Bass. But even excluding her testimony, the record reveals ample evidence tending to connect him to the methamphetamine and drug paraphernalia found in the apartment. Yarborough was present inside the apartment when police executed the search warrant. Police found 3.55 grams of methamphetamine, small baggies, and a digital scale in a small combination safe under the bed in the bedroom shared by Yarborough and Bass. Detective Curtis testified that the scale, the plastic baggies, and the large amount of methamphetamine indicated that the methamphetamine was intended for distribution. The scale had the words "Boss + CJo" handwritten on it. Detective Curtis testified that his investigation revealed that "Boss" referred to Yarborough and that "CJo" referred to Bass. The State had Yarborough show the trial court his knuckles, which were tattooed with the word "Boss." Police also found two syringes loaded with liquid methamphetamine in a dresser drawer in the bedroom. The bedroom also contained Yarborough's personal items, including legal documents with his name and signature on them, men's clothing in his size, and a bag containing men's personal hygiene items. These direct and circumstantial links proved by the State establish that Yarborough's connection

11

with the methamphetamine was more than just fortuitous. *See, e.g.*, *Figueroa v. State*, 250 S.W.3d 490, 501 (Tex. App.—Austin 2008, pet. ref'd) (holding defendant sufficiently linked to cocaine found underneath a bed in bedroom where documents, prescription bottle, and credit card—all with defendant's name on them—were found); *Cooper v. State*, 852 S.W.2d 678, 681 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (holding that two envelopes addressed to defendant in room where drugs were found constituted link between defendant and drugs).

Viewing all of the evidence in the light most favorable to the prosecution, as we must, and excluding the testimony of Yarborough's co-defendant Bass, we hold that the logical force of the evidence lends itself to the conclusion that Yarborough possessed the methamphetamine. The links to Yarborough are sufficient to permit the trial court, as the finder of fact, to find beyond a reasonable doubt that Yarborough knowingly possessed between one and four grams of methamphetamine with intent to deliver. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Evans*, 202 S.W.3d at 162 n.12. Accordingly, we hold that the evidence is sufficient to support Yarborough's conviction, and we overrule his second point. [2]

_____

[2]Yarborough argues in his third point that the evidence is factually insufficient to support his conviction, but we review the sufficiency of the evidence under the single sufficiency standard set out in *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. *Brooks v. State*, 323 S.W.3d 893, 895, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)). Consequently, we overrule his third point.

## V. Double Jeopardy

In his fourth point, Yarborough argues that the trial court erred by finding him guilty in contradiction of its earlier ruling granting his motion for instructed verdict, thus violating double jeopardy.

At the close of the State's case, Yarborough made an oral motion for a directed verdict, arguing that the evidence was insufficient to affirmatively link him to the methamphetamine found in the safe. The trial court initially granted the motion, but then the trial court continued to discuss the issues with the attorneys. After hearing more arguments from both sides and discussing the court's concerns, the trial court announced that it was "going to reverse its decision on that" and denied Yarborough's motion for directed verdict. Yarborough did not object and began his case-in-chief.

The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense. U.S. Const. amend. V. Generally, this clause protects against a second prosecution for the same offense after acquittals. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006). In the double jeopardy context, determination of whether an acquittal has occurred "is not controlled by the form of the judge's action" but instead by examining whether the judge's ruling, "whatever its label, actually represent[ed] a resolution, correct or not, of some or all of the factual elements of the offense charged." *State v. Blackshere*, 344 S.W.3d 400, 406–

407 (Tex. Crim. App. 2011) (citing *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S. Ct. 1349, 1354–55 (1977)).

Yarborough did not raise a double jeopardy objection at trial, but he may raise it for the first time on appeal if "the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and . . . enforcement of usual rules of procedural default serves no legitimate state interests." *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000) (footnotes omitted).

The trial court's initial ruling on Yarborough's motion for directed verdict was in the nature of an acquittal, but during the same discussion in which the trial court granted the motion, the trial court reconsidered its ruling and denied the motion. The trial court was within its discretion to reconsider this ruling. *See Rodriguez v. State*, 852 S.W.2d 516, 520 (Tex. Crim. App. 1993) (holding that trial court acted within its authority by withdrawing its order granting a mistrial when trial court granted mistrial, immediately conferenced with attorneys, and then withdrew its ruling after conference); *Carter v. State*, No. 05-96-00805-CR, 1998 WL 83799, at *1 (Tex. App.—Dallas Feb. 24, 1998, no pet.) (mem. op., not designated for publication) (applying *Rodriguez* to trial court's withdrawal of its initial ruling granting appellant's motion for directed verdict). Because the trial court acted within its authority by withdrawing its initial grant of a directed verdict in favor of Yarborough after further argument by the parties, no double jeopardy violation occurred. Thus, we overrule Yarborough's fourth point.

14

## VI. CONCLUSION

Having overruled Yarborough's four points, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: WALKER and MEIER, JJ.; and CHARLES BLEIL, J. (Senior Justice, Retired, Sitting by Assignment).

MEIER, J. filed a dissenting opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 16, 2015